(No. 59511<span style="background:black"> </span>

COLDWELL BANKER RESIDENTIAL REAL ESTATE SERVICES OF ILLINOIS, INC., Appellee and Cross-Appellant, v. GARY L. CLAYTON, Director of Registration and Education, Appellant and Cross-Appellee.

*Opinion filed February 22, 1985.*

Neil F. Hartigan, Attorney General, of Springfield (Steven F. Molo and Michael V. Casey, Assistant Attorneys General, of Chicago, of counsel), for appellant and cross-appellee.

Philip B. Kurland, Norman J. Barry, Christopher G. Walsh, Jr., and Charles D. Knight, of Rothschild, Barry & Myers, of Chicago, for appellee and cross-appellant.

John H. Carley, of Washington, D.C. (Arthur N. Lerner and Jacques Feuillan, of Washington D.C., and William MacLeod, of Chicago, of counsel), for *amicus curiae* Federal Trade Commission.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Coldwell Banker Residential Real Estate Services of Illinois, Inc., d/b/a Coldwell Banker-Thorsen Company, filed a four-count verified complaint for declaratory judgment in the circuit court of Cook County. At issue is the interpretation and constitutionality of section 15(e)(20) (the section) of the Real Estate Brokers and Salesmen License Act (Act) (Ill. Rev. Stat. 1981, ch. 111, par. 5732(e)(20).) Count I alleges that two marketing plans devised by the plaintiff do not violate the section. Count II alleges that the section violates the due process clause of the Illinois Constitution. Count III alleges that the section violates the equal protection clause of the Illinois Constitution. Count IV alleges that the section violates plaintiff's right to free speech under the Illinois Constitution and the first amendment of the United States Constitution. Ill. Const. 1970, art. I, secs. 2, 4; U.S. Const., amend. I.

Plaintiff and defendant, Gary L. Clayton, Director of the Department of Registration and Education, filed

cross-motions for summary judgment. Following oral arguments, the circuit court held that plaintiff's two marketing plans were in violation of the section. Nevertheless, the court granted plaintiff's motion for summary judgment, finding that the section was invalid as violative of the due process clause of article I, section 2, of the 1970 Illinois Constitution. Defendant directly appeals the decision to this court, pursuant to Supreme Court Rule 302(a)(1) (94 Ill. 2d R. 302(a)(1)). Plaintiff has cross-appealed from the circuit court's finding that its marketing plans violate the section, as well as reasserted its due process, equal protection and free speech claims. The Federal Trade Commission (FTC), as *amicus curiae*, has been allowed to file a brief on behalf of the plaintiff.

Four issues are raised on appeal: (1) Do plaintiff's marketing plans violate the section in question? (2) Does the section violate the due process clause of the Illinois Constitution? (3) Does the section violate the equal protection clause of the Illinois Constitution? and (4) Does the section undermine plaintiff's constitutional right to free speech?

The factual background giving rise to this declaratory action is not in dispute and has been fully disclosed in the parties' pleadings, briefs and discovery materials. Plaintiff is a residential real estate broker with over 750 brokers and sales associates. All are licensed by the Department of Registration and Education (the Department). Pursuant to the Act, the Department licenses and regulates all real estate brokers and salesmen providing real estate services in Illinois. Ill. Rev. Stat. 1981, ch. 111, par. 5701 *et seq.*, amended and recodified at Ill. Rev. Stat. 1983, ch. 111, par. 5801 *et seq.*, eff. Jan. 1, 1984.

Plaintiff became a subsidiary of Sears, Roebuck and Company (Sears) in 1981 when Sears acquired Coldwell, Banker & Company, plaintiff's parent corporation. At that time, plaintiff formulated the two marketing plans

which gave rise to this action. Under the "Home Buyer's Savings Program" (coupon program), an "Idea Book," which describes merchandise the home buyer may purchase from Sears at a discounted price, is given to the potential purchaser when the sales contract is signed. Receipt of the actual coupon booklet, however, is dependent upon the closing of the sale.

Plaintiff's "Commission Discount Plan" is an extension of its long-standing policy of giving commission discounts to its own employees and sales associates when purchasing or selling their homes. This policy was extended to employees of Sears and all of its wholly owned subsidiaries, except those of Dean Witter Reynolds, Inc., when plaintiff became a member of the Sears corporate family. The percentage of discount realized by the employee varies according to the position held. Thus, an employee of Sears and its subsidiaries would generally receive a discount of 10%, whereas plaintiff's employees generally receive a 20% discount. Plaintiff's sales associates receive a discount of 80% of gross profits in excess of $900. The actual discount is issued to the employee by the plaintiff subsequent to the time plaintiff receives its full commission from the seller. Notification of eligibility for commission discounts is given to the employees at the time they are hired as well as through internal company notices and publications.

Prior to implementation of the coupon plan and the commission discount plan, plaintiff sought an advisory ruling from the Department on the legality of extending the commission discount plan to other Sears "family" employees. The precise issue before the Department was whether the commission discount plan violated the section. Under the section, the Department may revoke or refuse to issue or renew a registrant's certificate of registration or may censure a registrant for the following cause:

"Using prizes, money, free gifts or other valuable consideration as inducements to (1) secure customers to purchase, rent or lease property when the awarding of such prizes, money, free gifts or other valuable consideration is conditioned upon the purchase, rental or lease, or (2) secure clients to list properties with registrant; \*\*\*." Ill. Rev. Stat. 1981, ch. 111, par. 5732(e)(20).

In two memorandums, the Department interpreted the section to be a "blanket prohibition against any type of inducement to secure either party to a real estate transaction." As such it found that plaintiff's commission discount plan was a prohibited "inducement" rather than an employee benefit program. Further, the Department stated that the section "prohibit[s] any scheme by which a salesman or broker communicates his fees other than through a simple statement of the commission or flat fee to be charged to his client for the service rendered." Based on this construction of the provision, the Department formulated a legal opinion which it sent, in memorandum form, to all Illinois real estate brokers and salesmen.

Subsequent to the issuance of the Department's opinion, plaintiff filed its verified complaint for declaratory judgment. In addition, plaintiff filed a motion for a preliminary injunction. No hearing was held regarding this motion, as the parties entered into an agreed order wherein the Department agreed to refrain from taking any administrative action against plaintiff for alleged violations of the section, in relation to the two plans.

The express language of the section prohibits the use of "prizes, money, free gifts or other valuable consideration" in the solicitation of customers, when receipt of such a benefit is conditioned upon entering into a real estate transaction with the covered registrant. In its judgment order, the circuit court found that both the coupon program and the commission discount plan were "within the terms and prohibitions of [the section]." The plaintiff maintains that a

proper construction of the section prohibits neither plan.

It is a basic tenet of statutory construction that the language of a statute should be given its plain and ordinary meaning. (*People v. Pettit* (1984), 101 Ill. 2d 309, 313; *People v. Brown* (1982), 92 Ill. 2d 248, 256; *City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46.) While prizes, money and free gifts have distinct definitional characteristics, each is clearly a thing of value. Further, under the doctrine of *ejusdem generis*, when a statutory clause specifically describes several classes of persons or things and then includes "other persons or things," the word "other" is interpreted as meaning "other such like." (*Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436.) Thus, by applying the doctrine of *ejusdem generis* to the phrase "or other valuable consideration," which follows the specifically enumerated items, the phrase must be construed as "other things of value." A literal reading of the statutory provision would indicate, therefore, that registrants are prohibited from offering anything of value to induce a contracting party to enter into a real estate contract. A commonsense reading of the statute would limit that interpretation to any offer of value beyond providing customary real estate brokerage services.

Application of this construction to the two plans under review requires a finding that both plans are prohibited inducements. Under the commission discount plan, covered employees would receive a check from the plaintiff subsequent to the closing of the real estate transaction. One purchasing a home through plaintiff would, in effect, be receiving a discount on the purchase price of the home, whereas the employee who has sold his home through plaintiff would receive a rebate on the sale's commission he has paid. In each instance the employee has received a benefit of economic value.

Likewise, the home buyer who receives the coupon booklet, pursuant to the coupon plan, is also the recipient

of a benefit of economic value. The coupons entitle the home buyer to purchase appliances, furniture, garden equipment, tools and other household goods at a savings of 10% to 20%. In addition, coupons for several free items are included. Thus, both plans utilize offerings of significant value. Further, by informing potential customers of the two plans prior to the formation of the contract and conditioning their availability upon the closing of the sale, plaintiff has offered the benefits as inducements in violation of the section. In its cross-appeal, plaintiff has reasserted its argument that this interpretation of the section violates its constitutional guarantees of due process, equal protection and free speech.

It is a well-established constitutional principle that every citizen has the right to pursue a trade, occupation, business or profession. This inalienable right constitutes both a property and liberty interest entitled to the protection of the law as guaranteed by the due process clauses of the Illinois and Federal constitutions. (*Rios v. Jones* (1976), 63 Ill. 2d 488, 496-97; *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 592; *Klein v. Department of Registration & Education* (1952), 412 Ill. 75, 78.) Nevertheless, this constitutionally protected right is limited by the right of the State to regulate such freedom of action, through the proper exercise of the police power, where the public health, safety or welfare so requires. (*Pozner v. Mauck* (1978), 73 Ill. 2d 250, 256; *Klein v. Department of Registration & Education* (1952), 412 Ill. 75, 78.) This regulatory power, however, is not without restrictions. "The demands of due process are proportional to the weight of the interest being protected in balancing that interest against the countervailing interests of society. [Citation.]" *Rios v. Jones* (1976), 63 Ill. 2d 488, 497.

The defendant maintains that the statutory provision under review is merely an economic regulation of a profession affecting the public welfare and does not affect funda-

mental rights. Thus, the Constitution requires only that the statute be "rationally related" to a legitimate State interest. *First Federal Savings & Loan Association v. Walker* (1982), 91 Ill. 2d 218, 224.

The plaintiff contends that the section cannot even withstand judicial scrutiny under the lenient standard suggested by the defendant. Nevertheless, plaintiff argues that the appropriate standard of review is, "at a minimum," that enunciated in *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343, for regulations involving commercial speech.

It is apparent that whichever test is used in determining the constitutionality of the section, this court must decide how closely the statutory provision is related to the purpose of the Act. The legislative intent of the Act "is to evaluate the competency of persons engaged in the real estate business for the protection of the public." Ill. Rev. Stat. 1981, ch. 111, par. 5701.

The defendant maintains that the section will further this goal by ensuring that brokers are chosen on the basis of their reputation for providing quality service at reasonable prices rather than on the basis of what item of value they are offering. In addition, defendant contends that the use of inducements "changes what was once a set and understandable cost into an uncertainty, which impairs the public's ability to make informed price and quality comparisons."

The circuit court ruled that the statutory provision violates the due process clause of the Illinois constitution. Specifically the court held that the "State has no legitimate police power purpose in protecting the public by prohibiting use of the [two plans] as inducements, and [the section] has no real and substantial relation to the goal of the [Act] ***." Thus, by finding the provision constitutionally infirm under the more lenient standard applicable to

regulatory statutes that do not restrict the exercise of fundamental rights, the court below did not reach the first amendment issues advanced by the plaintiff.

By prohibiting the use of "prizes, money, free gifts or other valuable consideration as *inducements*" (emphasis added), the section is, in effect, an advertising regulation. Commercial speech concerns are, therefore, directly at issue. As this court stated in *Talsky v. Department of Registration & Education* (1977), 68 Ill. 2d 579, 584:

> "It is apparent that we are here concerned with the extent to which the State may exercise its police power to restrict advertising by members of the [real estate profession] without impermissibly infringing upon those members' first amendment rights to freedom of speech."

As such, we find that the constitutionality of the section must be determined by utilizing the standard of review which has developed in cases concerning governmental restraints on commercial speech. See *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 566, 65 L. Ed. 2d 341, 351, 100 S. Ct. 2343, 2351; *City of Chicago v. Prus* (1983), 117 Ill. App. 3d 455, 468.

In 1976, the Supreme Court delivered the opinion of *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817. For the first time the court directly answered the question of whether purely commercial speech is entitled to first amendment protection. In *Virginia Pharmacy*, a Virginia statute, which prohibited licensed pharmacists from advertising the price of prescription drugs, was challenged and struck down. The court expressly found that purely commercial speech is entitled to first amendment protection from unwarranted governmental regulation. (425 U.S. 748, 761-62, 48 L. Ed. 2d 346, 358-59, 96 S. Ct. 1817, 1825-26.) Recognizing the societal value in the "free flow of commercial information" (425 U.S. 748, 765, 48 L. Ed. 2d 346, 360, 97 S. Ct. 1817,

1827), the court noted that "the State's protectiveness of its citizens rests in large measure on the advantages of their being kept in ignorance" (425 U.S. 748, 769, 48 L. Ed. 2d 346, 362, 96 S. Ct. 1817, 1829). As an alternative to such a "paternalistic approach" the court assumed, for the purpose of analysis, that such "information is not in itself harmful, [and] that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them." (425 U.S. 748, 770, 48 L. Ed. 2d 346, 363, 96 S. Ct. 1817, 1829.) The court was careful to point out that the regulation of commercial speech would be permissible under certain circumstances— *e.g.*, time, place, and manner restrictions, false or misleading speech, or speech related to an unlawful activity. 425 U.S. 748, 771-72, 48 L. Ed. 2d 346, 363-65, 96 S. Ct. 1817, 1830-31.

. *Bates v. State Bar* (1977), 433 U.S. 350, 53 L. Ed. 2d 810, 97 S. Ct. 2691, extended the first amendment protection afforded advertisement of retail prices of prepackaged prescription drugs in *Virginia Pharmacy* to the advertisement of the fees which would be charged for the performance of routine legal services. As in *Virginia Pharmacy,* the court stated that advertising by attorneys "that is false, deceptive, or misleading of course is subject to restraint." 433 U.S. 350, 383, 53 L. Ed. 2d 810, 835, 97 S. Ct. 2691, 2709.

Shortly after the *Virginia Pharmacy* and *Bates* decisions were handed down, this court was confronted with a "commercial speech case" with a factual setting analogous to the case at bar. In *Talsky v. Department of Registration & Education* (1977), 68 Ill. 2d 579, the plaintiff, a chiropractor, was to be disciplined for violating a statutory ban on medical advertising. Talsky's advertisement, in addition to offering "FREE CHICKEN," "FREE REFRESHMENTS" and "FREE SPINAL X-RAY," made promises of miraculous

drugless healing. Circulars portrayed before and after pictures of one sickly and one healthy child captioned with the phrases "sadness to sunshine" and "sickness to health."

Following a discussion of *Virginia Pharmacy* and *Bates*, the *Talsky* court found that "plaintiff's advertisements were uninformative and misleading, [and, therefore,] they were not entitled to first amendment protection within the purview of the *Virginia [Pharmacy]* and *Bates* decisions." (68 Ill. 2d 579, 594.) The court did conclude, however, that the advertising restrictions at issue were overly broad and might in some cases operate to suppress commercial speech in violation of the first amendment. However, because *Bates* held that overbreadth attacks were inapplicable to commercial speech, the *Talsky* court did not find the statute unconstitutional.

Since the *Talsky* decision, the Supreme Court has considered a number of cases involving commercial speech. (*Bolger v. Youngs Drug Products Corp.* (1983), 463 U.S. 60, 77 L. Ed. 2d 469, 103 S. Ct. 2875; *In the Matter of R.M.J.* (1982), 455 U.S. 191, 71 L. Ed. 2d 64, 102 S. Ct. 929; *Metromedia, Inc. v. City of San Diego* (1981), 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882; *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343; *Friedman v. Rogers* (1979), 440 U.S. 1, 59 L. Ed. 2d 100, 99 S. Ct. 887; *Ohralik v. Ohio State Bar Association* (1978), 436 U.S. 447, 56 L. Ed. 2d 444, 98 S. Ct. 1912.) All of these cases make it clear that truthful advertising is entitled to the protections (albeit a lesser degree of protection) of the first amendment. Conversely, misleading advertising may be entirely prohibited. However, "the States may not place an absolute prohibition on certain types of potentially misleading information *** if the information also may be presented in a way that is not deceptive." (*In the Matter of R.M.J.* (1982), 455 U.S. 191, 203, 71 L. Ed. 2d 64, 74, 102 S. Ct. 929, 937.) Nevertheless, the State retains some au-

thority to regulate commercial speech that is not misleading if the regulation can withstand the four-part analysis articulated in *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 566, 65 L. Ed. 2d 341, 351, 100 S. Ct. 2343, 2351. Under the four-part analysis set out in *Central Hudson,* it must be determined "[1] whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. [2] Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, [3] we must determine whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest."

Application of this analysis to the facts of the instant case reveals the following. Initially, we find, and the record establishes, that there is nothing inherently unlawful in either the coupon program or the commission discount plan. Further, unlike the promises of the plaintiff in *Talsky,* we find no evidence to suggest that the marketing plans are misleading or uninformative. On the contrary, both plans are easily understood, and advertisement regarding the plans would provide commercial information relevant to a consumer's choice of real estate broker or salesman.

Indeed, the defendant concedes that neither the commission discount plan nor the coupon plan is deceptive, fraudulent or misleading. Rather, the defendant maintains that the plans, as inducements, are subject to regulation because they have the potential to mislead prospective consumers of brokerage services. Thus, it is only the *communication*—the use of the plans as inducements to secure customers, with a direct tie to a transaction—which the defendant claims is illegal. The information sought to be communicated concerns a lawful activity.

It is also clear that the State, pursuant to its power to

protect the public welfare, has a substantial interest in regulating the real estate profession. As the Supreme Court stated in *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 792, 44 L. Ed. 2d 572, 588, 95 S. Ct. 2004, 2016: "[T]he States have a compelling interest in the practice of professions within their boundaries, and *** as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." More specifically, this court has found that the purpose of the Act is "to protect the public from incapable or dishonest persons who might aid in the perpetration of fraud by establishing qualifying standards for salesmen and brokers. The State licenses those who engage in a particular trade or practice a particular profession in order to compel them to do so honestly and with integrity, excluding those who are 'incompetent' or 'unworthy.' *** The emphasis is upon the evaluation of real estate brokers' and salesmen's fitness." *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 389-90.

Having answered the first two inquiries affirmatively, it is necessary to determine if the section's prohibition of the offering of "valuable consideration" as an inducement directly advances the State's substantial interest in the protection of the public from incompetent or dishonest real estate salesmen and brokers. The statutory restriction will not meet this criterion "if it provides only ineffective or remote support for the government's purpose." (*Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 564, 65 L. Ed. 2d 341, 350, 100 S. Ct. 2343, 2350.) Further, the State has the burden of justifying a restriction on commercial speech. *Bolger v. Youngs Drug Products Corp.* (1983), 463 U.S. 60, 71 n.20, 77 L. Ed. 2d 469, 480 n.20, 103 S. Ct. 2875, 2882 n.20.

The defendant maintains that the section's prohibition of plaintiff's marketing plans, as well as the use of a "lim-

itless array of gimmicks," prevents the distortion of the cost of the broker's services or the home he is attempting to sell. As such, the consumer is better able to make informed price and quality comparisons. Defendant goes so far as to suggest that brokers could use such inducements to lead buyers to specific neighborhoods or homes. Defendant concludes that the section "serves as a means of unfairly victimizing the public in the sophisticated financial transaction of the sale of property."

Defendant's bare assertions are conjectural and insufficient to justify the restrictions the section places on commercial speech. No evidence has been presented which would demonstrate that the use of commission discounts or discount coupons is inherently harmful or dishonest or likely to confuse or mislead the consumer. A more limited speech regulation which specifically prohibited the use of deceptive or misleading offerings as inducements would be an appropriate limitation on commercial speech. If a broker does, however, utilize a marketing plan to defraud or mislead a consumer, other State statutes, as well as other provisions of the Act, provide remedies. See, *e.g.*, Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*; the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 311 *et seq.*; Real Estate License Act of 1983 (Ill. Rev. Stat. 1983, ch. 111, pars. 5818(e)(1), (2), (4), (15)).

Because we find that the section does not directly advance the defendant's interest in consumer protection, we hold that it violates the first and fourteenth amendments of the United States Constitution, as well as article I, sections 2 and 4, of the 1970 Illinois Constitution. As such, we need not address defendant's equal protection argument.

For the reasons stated above, the judgment of the circuit court, granting plaintiff's motion for summary judgment, is affirmed.

*Judgment affirmed.*