576 A.2d 938

COLDWELL BANKER RESIDENTIAL REAL ESTATE SERVICES,
INC. AND GERALD A. MILLS, PLAINTIFFS–APPELLANTS, v.
NEW JERSEY REAL ESTATE COMMISSION AND DARYL G.
BELL, DEFENDANTS–RESPONDENTS.

IN THE MATTER OF COLDWELL BANKER BEST BUYER AND
BEST SELLER PROGRAM.

Superior Court of New Jersey
Appellate Division

Argued March 27, 1990—Decided July 11, 1990.

Before Judges DEIGHAN, R.S. COHEN and BROCHIN.

*Marguerite M. Schaffer* argued the cause for appellant Coldwell Banker Residential Real Estate Services, Inc. (*Shain, Schaffer, Rafanello & Blumenstyk,* attorneys, *Marguerite M. Schaffer* and *Richard H. Beilin* on the brief).

*Sarah T. Darrow,* Deputy Attorney General, argued the cause for respondent New Jersey Real Estate Commission (*Robert J. Del Tufo,* Attorney General, attorney, *Michael R. Clancy,* Assistant Attorney General, of counsel and *Sarah T. Darrow* on the brief).

*Richard E. Shapiro,* Director of Public Interest Advocacy, argued the cause *amicus curiae* for the Department of the Public Advocate (*Robert S. Smith, Jr.,* Acting Public Advocate, attorney, *Richard E. Shapiro* on the brief).

*C. Keith Henderson* argued the cause *amicus curiae* for the New Jersey Association of Realtors (*Lautman, Henderson, Mills & Wight,* attorneys, *C. Keith Henderson* of counsel, *C. Keith Henderson* and *Richard H. Mills* on the brief).

The opinion of the court was delivered by

COHEN, R.S., J.A.D.

This matter is here for the second time. It involves the question whether plaintiffs' proposed discount coupon promotion program is legally permissible. The New Jersey Real Estate Commission ruled that it was not. We affirm.

Plaintiff ("CB") is a real estate broker, wholly owned by Sears Roebuck. In 1983 it inquired of the Commission whether a described promotional program would be lawful. The Commission Director replied that there would be legal objection to the program, because regulations prohibited brokers from making free promotional offerings. In 1985 and 1986, the Commission considered whether to rewrite the regulation, decided not to, and instructed staff to enforce it after adequate notification to brokers.

CB started a Chancery Division suit to bar enforcement, and to declare the underlying statutory provisions unconstitutional. The matter was transferred here. *R.* 2:2–3(a)(2). We found that no conclusion had been made by the Commission whether CB's proposal would violate any statutory restrictions. We decided that it would be premature for us to determine the

statutory issues before the responsible agency had a chance to address the matter in the light of factual determinations it had not yet made. We thus remanded to the Commission for further proceedings. (A–4853–85T6, decided January 22, 1988.)

After the remand, the Commission held four days of hearings. It issued its thirty-page decision on February 28, 1989, including factual findings which we briefly summarize. CB is a licensed real estate broker. It seeks to institute a program of providing to home sellers who list with CB and to home buyers who purchase through CB discount coupons for Sears merchandise.

CB has 58 owned and 26 franchised offices in New Jersey. Its parent corporations are not licensed brokers. CB has developed what it calls the Best Seller and Best Buyer Plans.[1] The current version of the Best Seller Plan includes a booklet of Sears merchandise coupons conferring discounts of specific dollar amounts (as contrasted with percentages) on regular and sale items. The total redemption value is $250 on purchases of at least $3850. There are also specific merchandise coupons worth about $320. The coupons are given to sellers upon listing with CB. Sears absorbs all the "costs" other than printing.

The Best Buyer Plan also includes discount and specific merchandise coupons. They are earned by signing a contract to buy a home through a CB broker, and do not depend on the consummation of the purchase. Sears absorbs all "costs" other than printing. There are $300 in discount coupons for a minimum of $4650 in Sears purchases. The estimated value of the specific merchandise coupons is $394, but could be significantly higher, depending on the merchandise chosen.

The coupons are non-transferable, but the restriction is not enforced by CB or Sears. There is no requirement that the

---

[1] Descriptions of the Plans in complete detail can be found in the Commission's Decision and the underlying testimony.

Sears merchandise relate to the home bought or sold or to real estate at all.

The coupon books are offered as a marketing strategy designed to maximize profits and market share of Sears and CB. As the Commission said;

Unsophisticated sellers or buyers or relocating buyers unfamiliar with real estate brokers in a particular area might choose a Coldwell Banker office based on the offer of the Coupon Book.

A State-employed expert on consumer protection testified to program details which prompted the Commission to find that "the proposed Best Seller and Best Buyer Coupon programs have elements which may tend to mislead consumers."

Finally, the Commission found that the programs operate "as an extraneous inducement to consumers" to buy or sell through CB for reasons other than the quality of the professional services of the broker. The Public Advocate is particularly concerned that the Coupons also serve as extraneous inducements to buyers to purchase homes based upon the opportunity to receive coupons instead of the quality and suitability of the home itself.

On the basis of the evidence before it, the Commission concluded that the coupon programs would not violate *N.J.S.A.* 45:15–17a or –17c, which prohibit a broker to make any false promises, substantial misrepresentations, and to pursue a flagrant and continued course of misrepresentation or false promises. That conclusion is not challenged by any party before us.

The Commission made two additional determinations, however, which were adverse to CB. The first was that the coupon program would violate *N.J.S.A.* 45:15–17g, which prohibits

[u]sing any plan, scheme or method for the sale or promotion of the sale of real estate which involves a lottery, a contest, a game, a prize, a drawing, or the offering of a lot or parcel or lots or parcels for advertising purposes; ...

The Commission concluded that the coupons constituted a prohibited "prize."

The other determination was that the coupon program would violate *N.J.S.A.* 45:15–17k which prohibits

[p]aying any rebate, profit, compensation or commission to anyone not possessed of a real estate license; ...

■ We need not determine whether CB's coupon program would violate *N.J.S.A.* 45:15–17k, because we are satisfied that the Commission properly concluded that the coupons constituted a prize prohibited by *N.J.S.A.* 45:15–17g. CB argues that a "prize" in that provision must be taken to mean the subject of a gamble. CB points out that all of the other prohibited items involve lotteries, drawings, and other like promotions containing an offensive element of chance. The Sears coupons have no such element. There is no helpful legislative history.

■ We agree with the Commission that statutory words should be read according to their ordinary meanings, consistent with context and legislative history. *Safeway Trails, Inc. v. Furman*, 41 *N.J.* 467, 482, 197 *A.*2d 366 (1964), *cert.* den. 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.*2d 84 (1964). One of the meanings of the word "prize" in ordinary use is "a novelty or other premium given with merchandise as an inducement to buy." *Webster's Third New International Dictionary*, 1806 (1966). The most familiar example is the "prize" in the box of Crackerjacks. *See also Kugler v. Market Dev. Corp.*, 124 *N.J.Super.* 314, 306 *A.*2d 489 (Ch.Div.1973).

The evil addressed by *N.J.S.A.* 45:15–17g is the capacity of extraneous inducements to distract the residential buyer and seller from the material elements of their decisions to list, sell and buy their homes. To many buyers and sellers, these are among the most significant financial decisions they face. Distracting gimmickry creates dangers which are the legitimate concern of the Legislature and the Commission. The occupation of a real estate broker is permeated by considerations of public policy, and is subject to regulation "to protect the public from fraud, incompetence, misinterpretation, sharp or unconscionable practice." A broker is a fiduciary, and is required to exercise good faith and primary devotion to the interests of the principal. *Ellsworth Dobbs, Inc. v. Johnson*, 50 *N.J.* 528, 553,

236 *A*.2d 843 (1967). Promoting listings and sales by sweetening the real estate deal itself does no violence to that relationship. Extraneous inducements, however, can take the buyers' or sellers' eyes off the ball.

■ We are not persuaded by CB's complaint that barring its coupon program is an improper regulation of competition. It may have the effect of restricting competitive advantages by narrowing the range of inducements that may be offered to buyers and sellers. But, that side effect does not invalidate laws reasonably designed to bar practices which encourage inappropriate consumer behavior. Similarly, permitting brokers to provide home warranty programs and other free offerings ancillary to the real estate transaction itself is not inconsistent with the goal of barring extraneous and distracting inducements to deal. *See N.J.A.C.* 11:5–1.15(1) and 1.15(m)2. We confess some difficulty seeing a major distinction between CB's coupon program and aspects of Century 21's Preferred Client Club. However, lines have to be drawn somewhere, and this is not a regulatorily unreasonable place to draw it.

CB, the Commission, and the *amici curiae* call our attention to varying decisions in other jurisdictions. They are not helpful. They arise out of statutory and regulatory patterns different from ours and out of varying public policy determinations as to the proper role of brokers and the need for consumer protection, determinations which each state is free to make for itself. Our Legislature and the Commission take seriously the dangers created by extraneous inducements to residential buyers and sellers, and have adopted appropriately limited responses.

■ CB complains that the prohibition of its coupon programs violates the First Amendment's protection of commercial speech. Not so. It is the non-verbal conduct of employing extraneous inducements to produce real estate listings and sales that is prohibited. If that conduct is lawfully barred, as we conclude it may be, advertising the unlawful conduct is not

speech protected by the First Amendment. *Central Hudson Gas v. Public Service Com'n of N.Y.*, 447 *U.S.* 557, 563, 100 *S.Ct.* 2343, 2350, 65 *L.Ed.*2d 341 (1980); *Va. St. Bd. of Pharm. v. Va. Cit. Cons. Council*, 425 *U.S.* 748, 772, 96 *S.Ct.* 1817, 1831, 48 *L.Ed.*2d 346 (1976); *Pharmacy, Board of,* 191 *N.J.Super.* 7, 9, 465 *A.*2d 522 (App.Div.), certif. den. 95 *N.J.* 189, 470 *A.*2d 413 (1983), app. dism. *sub nom., Consumer Value Stores v. Board of Pharmacy of New Jersey*, 465 *U.S.* 1095, 104 *S.Ct.* 1583, 80 *L.Ed.*2d 117 (1984); *Coldwell Banker Res. v. Mo. Real Estate Com'n*, 712 *S.W.*2d 666 (Mo.1986); *Contra, Coldwell Banker Res. Real Estate v. Clayton*, 105 *Ill.*2d 389, 86 Ill.Dec. 322, 475 *N.E.*2d 536 (1985).

CB also argues that, if *N.J.S.A.* 45:15–17g prohibits its coupon programs, it deprives CB of property without due process of law. We disagree. A statute enacted to protect the public welfare is presumed to be valid. It will be sustained if it is not arbitrary, capricious or unreasonable, and the means selected bear a reasonable relationship to the legislative objective. *Brown v. City of Newark*, 113 *N.J.* 565, 572, 552 *A.*2d 125 (1989).

Residential buyers and sellers were reasonably seen by the Legislature to need protection against distraction by brokers' extraneous inducements. *N.J.S.A.* 45:15–17g contains a prohibition against brokers' "prizes" which is rationally related to the statutory goal. It is of no consequence that the same prohibition was not extended to non-broker developers. They are not licensed professionals with fiduciary obligations in whom the public is invited to place a measure of trust. Buyers' relations with developers are of a more arms-length variety. It is also of no consequence that the Commission has interpreted *N.J.S.A.* 45:15–17g not to bar giving ancillary services. *N.J. A.C.* 11:5–1.15(m). The distinction is reasonable in the light of the legislative and regulatory goal. The classification implicit in the regulation is a reasonable one.

After our earlier remand, the Commission gave the issues raised by CB thorough consideration. Its thoughtful opinion on the non-constitutional questions we have found pivotal and controlling might well have been adopted as our own. We are also satisfied CB's constitutional arguments have no merit.

Affirmed.