(No. 60663.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT BOSSIE *et al.*, Appellees.

*Opinion filed October 3, 1985.*

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and Ellen M. Flaum, Assistant Attorneys General, of Chicago, of counsel), for the People.

David C. Thomas, of Chicago, and Mara Jan Siegal, of Des Plaines, for appellees.

JUSTICE SIMON delivered the opinion of the court:

On June 4, 1984, the 21 defendants in this case were arrested at the Rock Island Arsenal during a demonstration against nuclear armament and charged under sections 4 and 5 of the Illinois Public Demonstrations Law (Ill. Rev. Stat. 1983, ch. 38, par. 85—1 *et seq.*). The defendants were arrested while sitting or lying in the street, after a warning from police officers to clear the roadway. The circuit court of Rock Island County granted a pretrial motion to dismiss the charges, holding section 5 unconstitutional on its face and as applied on the ground that it violates rights guaranteed by the first and fourteenth amendments of the United States Constitution. Appeal was taken directly to this court pursuant to Supreme Court Rule 603 (87 Ill. 2d R. 603).

The relevant portions of the statute in question provide:

"Sec. 4. Acting with other groups—Size of assemblage. It is unlawful for any group or organization or any individual acting with such group or organization, to conduct or participate in any march, assembly, meeting or

gathering on roadways unless such march, assembly, meeting, or gathering is limited to such numbers as, in the opinion of the principal law enforcement officer, will not obstruct pedestrian or vehicular traffic in an unreasonable manner. The principal law enforcement officer shall, within 12 hours of receiving the notice required by Section 5, inform the group or organization as to the limitation on number of persons allowed to participate.

Sec. 5. Notice of assemblage in writing—Contents. It is unlawful for any group or organization to conduct or participate in any march, assembly, meeting or gathering on roadways unless the principal law enforcement officer has been given notice in writing of the location, the maximum number of persons participating, and the names and addresses of the organizers of any such march, assembly, meeting or gathering, its route, and its time of inception and duration at least 24 hours before such inception." Ill. Rev. Stat. 1983, ch. 38, pars. 85—4, 85—5.

The State contends that this is a constitutionally permissible time, place and manner restriction, citing *United States v. O'Brien* (1968), 391 U.S. 367, 376-77, 20 L. Ed. 2d 672, 679-80, 88 S. Ct. 1673, 1678-79:

"This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. *** [W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

The State points out that this statute is directed at conduct, or the "nonspeech element" of a demonstration, rather than at its content, or the "speech element." The statute is content-neutral, the State argues, and the *O'Brien* standard therefore applies.

Laws regulating traffic are clearly within the constitutional power of the government, and section 2 declares that the purpose of the Act is to protect the public from an unreasonable disruption of traffic and of police, fire and emergency services because of unrestrained picketing or demonstrating on the roadways. (Ill. Rev. Stat. 1983, ch. 38, par. 85—2.) Regulation of traffic in the interest of public health and safety has been recognized by the Supreme Court as a legitimate and important governmental interest. (See, *e.g.*, *Shuttlesworth v. Birmingham* (1969), 394 U.S. 147, 152, 22 L. Ed. 2d 162, 168, 89 S. Ct. 935, 939; *Cox v. Louisiana* (1965), 379 U.S. 536, 554-55, 13 L. Ed. 2d 471, 483-84, 85 S. Ct. 453, 464.) Moreover, that interest is unrelated to the suppression of free expression.

However, the defendants argue that the statute is unconstitutionally vague. A vague statute cannot meet the last prong of the *O'Brien* standard—the requirement that the incidental restriction on first amendment freedoms be no greater than is essential to further the governmental interest. As the Supreme Court explained in *Grayned v. City of Rockford* (1972), 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 227-28, 92 S. Ct. 2294, 2298-99:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary

and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" *** than if the boundaries of the forbidden areas were clearly marked.' " (408 U.S. 108-09, 33 L. Ed. 2d 227-28, 92 S. Ct. 2298-99.)

A vague law thus violates the due process clause of the fourteenth amendment, permits arbitrary and discriminatory enforcement, and chills the exercise of first amendment rights.

Section 5 of the statute provides that notice of any march, assembly, meeting or gathering must be given in writing to "the principal law enforcement officer." (Ill. Rev. Stat. 1983, ch. 38, par. 85—5.) This term is never defined, however. The State argues that "the principal law enforcement officer" must refer to the sheriff of the county or the chief of police of the municipality in which the demonstration occurs. A person of ordinary intelligence might, however, equally reasonably interpret "the principal law enforcement officer" as the senior ranking officer or officer in charge of the police or sheriff's department at the time of filing the required notice or at the time of the planned demonstration, the senior officer in charge of the traffic division of the municipal or county law-enforcement entity, the chief or another official of the State Police department, the State's Attorney, the Attorney General, the mayor, or the county executive. Correctly identifying the person to whom notice must be given even under the State's interpretation of the term requires knowledge of whether the site of the planned demonstration is a municipal or county roadway. In the case of marches that cross the boundaries of several political subdivisions, one must guess whether notice must be given to the "principal law enforcement officer"

where the march originates, where it terminates, where it passes through, or all of them. Failure to guess correctly will subject those responsible for giving notice as well as those participating in the demonstration to criminal penalties.

The Supreme Court has declared that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." (*Lanzetta v. New Jersey* (1939), 306 U.S. 451, 453, 83 L. Ed. 888, 890, 59 S. Ct. 618, 619.) Moreover, " '[s]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser.' [Citations.]" (*Hynes v. Mayor of Oradell* (1976), 425 U.S. 610, 620, 48 L. Ed. 2d 243, 253, 96 S. Ct. 1755, 1760.) We hold that the Illinois Public Demonstrations Law is unconstitutional because "men of common intelligence must necessarily guess at its meaning" (*Connally v. General Construction Co.* (1926), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127). Consequently, we need not reach the other arguments the defendants have advanced for finding the statute invalid.

Because the term "principal law enforcement officer" is used throughout the substantive provisions of the statute, the entire statute is contaminated by unconstitutional vagueness. The severability clause (Ill. Rev. Stat. 1983, ch. 38, par. 85—9) therefore cannot save any portion of the statute; there is no provision that can be given effect in the absence of a clear definition of that term.

For the reasons stated herein, the judgment of the circuit court is affirmed.

*Judgment affirmed.*