(No. 62407.—

ROBERT COLLURA, Appellant, v. THE BOARD OF
POLICE COMMISSIONERS OF THE VILLAGE
OF ITASCA *et al.*, Appellees.

*Opinion filed October 1, 1986.*

Rock, Fusco, Reynolds & Heneghan, P.C., of Chicago (William P. Jones and Michael J. Murray, of counsel), for appellant.

James R. Schirott, Charles E. Hervas and James G. Sotos, of Schirott & Associates, P.C., of Itasca, and Lawrence C. Traeger, of Traeger & Traeger, of Chicago, for appellees.

JUSTICE WARD delivered the opinion of the court:

The circuit court of Du Page County confirmed an order of the Itasca board of police commissioners (the board) discharging the plaintiff, Officer Robert Collura, on the complaint of Itasca police chief Stanley Rossol that Collura, while on duty, had improperly fondled a woman. The appellate court affirmed (135 Ill. App. 3d 827), and we granted the plaintiff's petition for leave to appeal under our Rule 315 (94 Ill. 2d R. 315(a)).

In a prior appeal, this court determined that the board improperly considered evidence of a polygraph examination at Collura's hearing, and the court remanded the case to the board for a new hearing at which evidence of the polygraph examination and its results were to be inadmissible. *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 312, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 335, 104 S. Ct. 391.

At the second hearing, the board heard the testimony of Alicia Martinez that when she was in her automobile outside the Colonial Village apartment complex in Itasca around 8 p.m. on December 27, 1979, the plaintiff stopped his marked police vehicle in front of her. He asked Martinez her reason for being in the parking lot and she responded that she was waiting for a girlfriend who was visiting a friend at the complex. Martinez testi-

fied that she left the parking lot but returned a short time later. She said that, around 10 or 15 minutes later, Collura again stopped his vehicle in front of her car and asked why she was still in the parking lot. The witness stated that she told Collura that she had lied to him earlier, and that she was visiting her boyfriend, who lived in the apartment complex. Martinez recalled that she was upset and crying because her boyfriend had just told her that he intended to marry someone else. She stated that she told Collura that her boyfriend was moving from the apartment complex that night and she was waiting so that she could follow him and "talk things out."

Collura informed her that the registration tag on her license plate had expired, and he asked to see her driver's license. Martinez responded that she did not have her license with her. She testified that at about this time a second Itasca police car arrived, and she said that Collura identified the officer who emerged as a lieutenant. The second officer, whose name she did not know but who was later identified as Officer Terry Mickow, asked Martinez if she had any means of identification. She gave him a supermarket "check cashing card" and a card bearing her social security number. Mickow returned the cards to her and, after examining her license plates with Collura, returned to his automobile and left the parking lot.

Martinez said that another Itasca police officer, identified in subsequent testimony as Officer Craig Hansen, drove through the parking lot, but she testified that he did not stop. Martinez said that Collura told her that he would have to take her to the police station because she had an expired license-plate tag, was driving without a driver's license, and was trespassing on private property. She told him that she did not want to go to the police station because she did not wish her mother to know that she had been visiting her boyfriend. She stated that

Collura told her that she would have to post a $1,000 bond if he took her to the station, and he asked if she had any weapons. Collura said that he was concerned that she intended to harm her boyfriend, but she assured him that she did not have a weapon and did not intend to hurt her boyfriend. She testified that he asked if she had a weapon under her jacket, and in response she unzipped the jacket to show that she was not concealing a weapon. Martinez stated that the plaintiff put his hand inside her jacket and touched her breast.

Martinez said that Collura repeatedly asked her what she had "to offer" in exchange for his not taking her to the police station. He asked if she had a weapon concealed in the waistline of her slacks and, while still seated in her car, she pulled her sweater up slightly so that he could see that she did not have a weapon. He inquired about "lower," she said, and suggested that she pull down her slacks so that he could check for a weapon. When the witness protested that she did not believe that a proper search required this, Collura answered that he would take her to the police station if she refused to allow him to check for weapons. Martinez stated that she then complied and that Collura reached inside her undergarment and touched her intimately.

Martinez recalled that she became angry and pulled up her slacks. About this time she heard Collura receive a call about "a burglary alarm at Wickes" on his police radio. She said that Collura told her to lower her slacks for "the final check," but she refused. He remained with her for 5 or 10 minutes after he received the call about a possible burglary at a Wickes furniture store. She said that Collura did not give her a ticket or a citation.

Officer Terry Mickow testified that he heard over his police radio that Collura made a vehicle stop at the apartment complex and, using a transcript of that night's police radio transmissions which was introduced

into evidence, the witness stated that the call came at 9:42 p.m. Mickow drove to the complex, arriving about two minutes later. Mickow said that upon his arrival Collura informed him that he had observed Martinez drive through a nearby industrial park, and that she could not produce any identification. The witness recalled that Collura identified him to Martinez as a lieutenant, and that upon his request, Martinez showed Mickow a check-cashing card and a card with her social security number. Mickow testified that their station radioed at 9:46 that Martinez had a valid driver's license. However he did notice that her license-plate sticker had expired. Collura assured him that no further assistance was needed, and he left the parking lot about 9:54.

At 10:09 Mickow heard a "burglary in process" call, regarding a Wickes furniture store, being directed to Collura over the radio. The witness was near the store at the time, he said, so he notified Collura over the radio that he too would answer the call. As he arrived at the store, Mickow saw Officer Hansen drive up in his marked vehicle, and the two officers entered the store through a front door. At 10:15, Collura informed the officers over the radio that he was in the rear of the building. Mickow left the store from the rear at 10:20 and saw Collura outside the store.

Officer Hansen testified that after he heard Collura had stopped a vehicle he proceeded to a factory parking lot across the street from the apartment complex. (It was explained that, though it was against department policy to leave an assigned patrol area, the officers would often offer assistance when a suspicious car is stopped in the area of the industrial park.) He had a clear view of the parking lot, but he said that Collura was standing on the other side of Martinez' automobile. He stated that while he was there Collura remained 3 to 4 feet from the car. Collura requested Hansen to switch

his police radio to another frequency, and they then had an unrecorded conversation on that frequency. Hansen testified that during the conversation Collura told him that Martinez was upset about her boyfriend and that there was no need for Hansen's assistance. Hansen stayed but a minute longer and left the area. He said that he was in the factory lot about seven minutes. Officer Hansen corroborated Mickow's testimony that they met while responding to the call at the furniture store, and that at 10:15 Collura told them that he was at the rear of the store.

Officer Collura acknowledged that he stopped Martinez' vehicle that night, but he denied that he touched her. His testimony generally coincided with that of Martinez up to the time he had the unrecorded conversation with Hansen, after which he said that he ordered her to leave the apartment-complex parking lot. She refused to leave, he said. At 10:09 he received a call concerning a burglary at Wickes furniture store, and he again ordered her to leave the area. He testified that as he walked to his vehicle, Martinez asked him not to leave because she was upset that her boyfriend was with another woman. He said that he advised her to forget about him and told her not to remain in the area.

He testified that he left the apartment complex and arrived at the rear of the Wickes store at approximately 10:14 or 10:15. He admitted that he may have notified the officers in the store that he was at the rear of the store as he was driving up to the store and before he actually alighted from his car.

The board found that the evidence supported the allegation in the complaint that Collura had improperly touched Martinez, and it ordered that he be discharged from the Itasca police department.

The plaintiff complains that Nancy Fedor, who sat as a board member at both of Collura's hearings, should

have recused herself from the second hearing because at the first hearing she had heard the impermissible evidence of the polygraph examination. He says that her refusal to recuse herself, and the other board members' failure to disqualify her, denied him an impartial tribunal which he says is required by the due process clauses of the State and Federal constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2; *In re Murchison* (1955), 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623; *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42.

It is true that the right to pursue a trade, occupation, business or profession constitutes a property and liberty interest protected by the due process clauses of the Federal and Illinois constitutions. (*Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 397; *Rios v. Jones* (1976), 63 Ill. 2d 488, 496-97.) Moreover, the same due process guarantee of an impartial tribunal in judicial proceedings applies to adjudications in administrative proceedings. (*Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456; *Gibson v. Berryhill* (1973), 411 U.S. 564, 36 L. Ed. 2d 488, 93 S. Ct. 1689; *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42.) It must be kept in mind, however, that "[d]ue process *** is a term that 'negates any concept of inflexible procedures universally applicable to every imaginable situation.' " *Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482, 494, 49 L. Ed. 2d 1, 10, 96 S. Ct. 2308, 2315, quoting *Cafeteria & Restaurant Workers Union v. McElroy* (1961), 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748.

It cannot be laid down as a universally applicable principle that an administrative officer sitting in an adjudicatory capacity invariably will be disqualified from sit-

ting at a rehearing on the sole ground that the officer heard improper evidence of a polygraph examination at an earlier hearing. As would be true in any other case where evidence was improperly received, the question of whether a recusal was required depends upon the facts and circumstances of each case. A mere possibility of prejudice is insufficient to show that a board, or any of its members, was biased. (*Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 321.) The plaintiff argues that *People v. Taylor* (1984), 101 Ill. 2d 377, in which this court observed that the results of polygraph examinations were generally unreliable and often afforded undue significance by jurors, stands for the proposition that "exposure to [a polygraph examination] is enough to raise the presumption of partiality." (101 Ill. 2d 377, 393.) In *Taylor*, however, the court was concerned with a trial court's failure to excuse for cause prospective jurors who had been exposed, through extensive pretrial publicity, to information that the results of the defendant's lie-detector examination were inconclusive, unlike those of his codefendant whose case had been dismissed, and that as a consequence of the examination the prosecution decided to pursue the charges against him. Here an administrative officer had been exposed three years before the hearing to evidence of an unfavorable polygraph examination, which she was directed to disregard. "Without a showing to the contrary, State administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' " *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 55, quoting *United States v. Morgan* (1941), 313 U.S. 409, 421, 85 L. Ed. 1429, 1435, 61 S. Ct. 999, 1004, and *Withrow v. Larkin* (1975), 421 U.S. 35, 55, 43 L. Ed. 2d 712, 728, 95 S. Ct. 1456, 1468. *Cf. National Labor Relations Board v. Donnelly Gar-*

*ment Co.* (1947), 330 U.S. 219, 91 L. Ed. 854, 67 S. Ct. 756 (officers of administrative agency not barred from sitting simply because they ruled against a party in an earlier hearing).

The plaintiff asserts that board member Fedor's freedom from bias is not supported by the record. In denying the plaintiff's motion for recusal, Fedor stated that the three years that had passed since his first hearing had "dimmed her recollection of the matter," and that in the interim she has had "absolutely no reason to review the records concerning the case, and [has] not done so." The record shows that Fedor and the other board members questioned witnesses after examination by counsel, and their questions revealed thoughtful consideration of the testimony they had heard. Counsel for the board cautioned the members before the second hearing that they should ignore any evidence of the polygraph examination, and he distributed copies of our opinion in *Kaske* in which it was stated that "any results of [Collura's] polygraph examination, any opinions offered by the polygraph examiner, or any references to the polygraph examination are inadmissible as evidence." (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 312.) It has been held that any prejudice from a hearing board's being exposed to evidence of a polygraph examination is cured by an admonition by the board's counsel that the evidence should be disregarded. (*Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 445; *Austin v. City of East Moline Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 537, 543.) There is nothing in the record to suggest that the board disregarded its counsel's direction and considered the polygraph examination in arriving at its decision.

We reject the plaintiff's argument that a new board should have been appointed because the sitting board was aware of the polygraphic examination by the distri-

bution of the *Kaske* decision before the second hearing. The substitution of tribunals for administrative proceedings is rare. (*Federal Trade Commission v. Cement Institute* (1948), 333 U.S. 683, 701-03, 92 L. Ed. 1010, 1034-35, 68 S. Ct. 793, 803-04.) The remedy for any unfairness which may occur on a rehearing is administrative review of the hearing, not the appointment of a new board. *Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 445; *Mank v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 478, 486.

The plaintiff maintains that the decision of the board was against the manifest weight of the evidence. He claims that the time sequence established by the transcript of police calls that night demonstrated that he would not have had the opportunity to molest Martinez as she claimed, and he challenges the board's conclusion that he did not respond promptly to the call of a burglary at the furniture store. He points out that Martinez testified at the first hearing that the incident involving her occurred in the interval between Mickow's departure from the area and Hansen's arrival, yet she testified at the second hearing that Hansen had already left when the incident occurred. Collura also argues that her testimony was incredible because she testified that the incident occurred around 8:30 p.m. when the transcript shows that the events occurred between 9:30 and 10:30 p.m. Finally, he says that the board, in reaching its decision, disregarded evidence that the parking lot was well lighted.

The findings of fact made by an administrative agency are to be considered "*prima facie* true and correct." (Ill. Rev. Stat. 1983, ch. 110, par. 3—110; *Marion Power Shovel Co. v. Department of Revenue* (1969), 42 Ill. 2d 13.) A court, on administrative review, should not weigh the evidence to determine where the preponder-

ance lies but should limit its inquiry to ascertaining whether the findings and decision of the agency are against the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) It is not the court's function to resolve conflicting evidence. *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 332-33.

Collura's challenge to the board's obvious conclusion that he had an opportunity to improperly touch Martinez lies in conflicting testimony of when Officer Hansen left the area. The board set the time at 10:03. Yet Collura says that he asked Hansen to switch to the other frequency on the radio at 10:02, and he notes that Hansen's testimony was that he stayed for "another minute or so" after the conversation. The plaintiff concludes that Hansen left the parking lot at approximately 10:05. Even if we subscribe to the plaintiff's account, we agree with the board that he had the opportunity to commit the act. The call summoning him to the furniture store came at 10:09, and it was Martinez' testimony that the plaintiff touched her just prior to the call. Collura did not arrive at the furniture store until 10:15, and there was evidence that the store was a short distance from the apartment complex. We judge that the board's finding that Collura had the opportunity to molest Martinez is not against the manifest weight of the evidence.

The credibility of the victim, the plaintiff and the other witnesses was for the board. The board may have felt that Martinez' inconsistent testimony of whether Hansen had already been in the parking lot and left, or had yet to arrive, when the incident occurred was explainable by the three-year interval between hearings. Her apparent mistake in placing the events an hour before they happened may have been similarly explained.

She testified that she was upset by the incident, and it is not unreasonable to assume that she may have been confused about the sequence of events. Her testimony of the manner in which the plaintiff offensively touched her was unwavering, however, and her recollection of what was said and done in the presence of Officer Mickow was corroborated by his testimony. Lastly, the plaintiff's contention that the board's decision was made in disregard of the evidence that the parking lot was well lighted is not convincing. Martinez testified that she never left her automobile in the time she was with the plaintiff, and consequently the incident could have occurred unwitnessed. There was no evidence that there were witnesses near her. The record supports the decision of the board, and its finding is not against the manifest weight of the evidence.

For the reasons given, the judgment of the appellate court, affirming the circuit court, is affirmed.

*Judgment affirmed.*