JOHN L. RACKOW, JR., *et al.*, Plaintiffs-Appellants, v. THE HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellees.

Second District No. 85—0986

Opinion filed February 26, 1987.

Paul R. Jenen, of Wheeling, and Frank G. Roux, of Lake Zurich, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee Human Rights Commission.

Patricia A. Motto, of Brubaker & Motto, of Chicago, for other appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, John L. Rackow, Jr., Lois Rackow, Century 21/Grant Associates, Inc., an Illinois corporation, Alan Nisenbaum, and Joseph Karwowski, appeal from the November 4, 1985, order of the circuit court of Lake County affirming the decisions of the Illinois Human Rights Commission, a named defendant, which found that plaintiffs violated section 3—104(A) of the Illinois Human Rights Act (Ill. Rev. Stat. 1981, ch. 68, par. 3—104(A)) by refusing to lease an apartment to Myron Podgurski, also a named defendant, because he would have one or more of his children who were less than 14 years old residing with him.

On February 22, 1984, plaintiffs filed a complaint for review of the November 22, 1982, and January 30, 1984, administrative decisions of the Human Rights Commission under the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) pursuant to section 8—111(A)(1) of the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, par. 8—111(A)(1)). The complaint identified the plaintiffs Nisenbaum and Karwowski as the beneficiaries of a certain land trust, commonly known as trust Nos. 40375 and 40588, which owned a two-building apartment complex in Lake Zurich known as Water's Edge Apartments, and the plaintiffs John L. Rackow, Jr., and Lois Rackow as employed by this land trust to manage, administer, and maintain

Water's Edge. The plaintiff Century 21/Grant Associates, Inc., was not identified. The complaint stated that the November 22, 1982, order reflected the Commission's finding that plaintiffs had discriminated against Myron Podgurski based upon the number and ages of his children, awarded Podgurski $300 in compensatory damages and ordered plaintiffs to offer him a lease, and that the January 30, 1984, order awarded Podgurski $4,644.75 as reasonable attorney fees. The complaint alleged that judicial review was sought because the November 22, 1982, decision of the Commission is against the manifest weight of the evidence, adversely affects plaintiffs' right to place meaningful and reasonable restrictions upon the use of their rental property to prevent the premises from being inhabited by an absolutely unlimited number of tenants in an exceptionally small and confined area, and is based upon an unconstitutional statute in that it is unduly broad, vague, and unreasonably ambiguous with reference to the number of tenants to be allowed in a particular apartment, thereby depriving plaintiffs of the use of their property without due process of law.

The record of the administrative proceedings was filed in the circuit court and reveals the following. On October 16, 1980, Myron Podgurski filed a grievance with the Department of Human Rights claiming that he was refused a lease at Water's Edge Apartments by Lois Rackow and John L. Rackow, Jr., because his children under the age of 14 years would be visiting him. He later filed two additional grievances.

In response to these grievances, the Department of Human Rights filed a three-count complaint with the Human Rights Commission alleging in count I that Podgurski was aggrieved by plaintiffs' policy of not allowing children in one-bedroom apartments or of allowing only one child, under five years old, in a two-bedroom apartment, which is prohibited by section 3—104(A) of the Illinois Human Rights Act; alleging in count II that Podgurski was refused a lease at Water's Edge because he reported the above policy to the Department of Human Rights; and alleging in count III that the policy enumerated above had a discriminatory impact against separated and divorced persons and that Podgurski was refused a lease because of his status as a recently separated individual, which is prohibited by section 3—102(A) of the Illinois Human Rights Act. The complaint requested an order requiring plaintiffs to lease Podgurski a two-bedroom apartment, to cease the application of the above-enumerated policy, and to pay Podgurski's costs and attorney fees incurred as a result of his grievances.

Certain uncontested facts submitted in a prehearing memo to the administrative law judge prior to hearing testimony stated, in part,

that: on October 9, 1980, Podgurski completed a written application for a two-bedroom apartment in the Water's Edge Apartments; the application was presented to Lois Rackow, who, along with John L. Rackow, Jr., was responsible for showing the apartments in the complex, collecting rents, and paying the bills and debts of the complex; Grant Associates, Inc., is an Illinois corporation licensed to sell real estate, with John L. Rackow, Jr., as its president and majority stockholder; Alan Nisenbaum and Joseph Karwowski are the beneficial owners of Water's Edge Apartments under a land trust; Water's Edge Apartments is a housing accommodation as defined by section 3—101(C) of the Illinois Human Rights Act; John L. Rackow, Jr., is a real estate broker or salesman as defined by section 3—101(D) of the Illinois Human Rights Act; as of October 9, 1980, Water's Edge Apartments had a policy under which no children at all were permitted in the one-bedroom units and only one child under the age of five years was permitted in the two-bedroom units; the above-stated policy is still in effect; as of October 8, 1980, Podgurski was separated from his wife, and his children did not live with him although he had visitation rights; when Podgurski completed his rental application, he placed a "0" after the section entitled "number of children"; Podgurski verbally informed Lois Rackow that he had children who would not be living with him permanently, but that he had visitation rights as to those children; Podgurski informed Lois Rackow that he might pick up two or three of the youngest children for a weekend each month, and that occasionally, in the summer, a couple of the youngest children might stay with him for part of the summer; plaintiffs denied a rental unit to Myron because plaintiffs viewed the visitation rights as constituting residence of children over five years of age in violation of the rental policy; on October 16, 1980, Jose Trevino, an investigator for the Department of Human Rights, telephoned Grant Associates, Inc., and spoke with Lois Rackow; and during this conversation, Trevino inquired about the status of Podgurski's rental application, and Lois Rackow denied she had refused to rent the apartment to Podgurski but stated that she would now refuse to rent it to him.

Plaintiffs' answers to interrogatories revealed, in pertinent part, that Lois and John L. Rackow, Jr., were the two individuals who are responsible for showing the apartments in the complex, paying the complex's bill and debts, and collecting the rents; that Grant Associates, Inc., an Illinois corporation licensed to sell real estate, with John L. Rackow, Jr., as its president and majority shareholder, had no managerial or management responsibilities in Water's Edge Apartments whatsoever; that although Podgurski indicated on his written applica-

tion that there were no children to be residing in the unit, it was learned by management that he would have two or three children staying with him for two- to three-month periods of time, he was recently divorced and had eight or nine children, the custody of whom was awarded to his former wife, he received rights of liberal and reasonable visitation which he planned to exercise vigorously; that under these circumstances, management would view this as children over 5 years of age and less than 18 years of age residing in the complex; and that as of October 9, 1980, the unwritten policy of the management, still in full force and effect, was that no children at all were permitted in the one-bedroom units and only one child under the age of five years was permitted in the two-bedroom units.

On January 20, 1982, testimony was presented to James Gerl, an administrative law judge of the Human Rights Commission, which revealed the following. Myron Podgurski testified that in September 1980, he lived in Lake Zurich, but decided to move to larger living quarters because he had a small one-bedroom apartment with only 500 to 700 square feet of living space. He was earning approximately $43,000 per year as a manager of real estate and marketing services for Union Oil Company of California. Podgurski initially called a Century 21 office and inquired about the availability of a unit at Water's Edge Apartments. He spoke to a woman who instructed him to contact one of their agents to be shown a unit. He then contacted Harold Giese, a Century 21 agent and Podgurski's landlord in the unit he was then renting. Giese showed him a unit at Water's Edge, and he liked it very much and wanted to rent one. Podgurski filled out an application on October 9, 1980, for the apartment and took it to the Century 21 office, where he met Lois Rackow. Upon examining the lease application, he noted that three items bothered him which he brought to her attention, but only after he had filled out the application in its entirety.

Two of these items were the questions concerning his marital status, as he was recently separated from his wife although he checked the block indicating that he was divorced, and the number of children which he had, as he marked that he had no children although he had eight children, none of whom lived with him. He stated that he specifically told Lois Rackow that he was not divorced but only separated, although she did not tell him to change the application.

Podgurski also testified that he indicated on the application that he had no children because none of his children were living with him, but were living with their mother in Wisconsin; however, he told Lois Rackow that there were times when his children would visit him. The names and ages of his children at the time he filled out the rental ap-

plication were: Rebecca, age 6; Pamela, age 12; Myron, Jr., age 14; Barbara, age 16; Diane and Donna, age 18; Linda, age 20; and Kathleen, age 21. He told Lois Rackow that some of his children would come to visit him once or twice a month, Saturday through Sunday; that Myron, Jr., spent time with him over the summer, approximately 1½ months; that his smaller three children spent time with him on the weekends; and that the older children did not visit for any extended period of time. Lois Rackow advised him that children were not permitted in the apartments, and that even though the children would not be living with him but only visiting on weekends, she advised him that it did not make any difference because the apartment complex had a rule that children over five years of age were not permitted in the buildings. She indicated to him that children were a nuisance and that they ran around the halls causing problems. She also indicated that she very seriously doubted whether he could rent an apartment at Water's Edge. He was seeking a two-bedroom apartment renting at $330 per month.

Podgurski next testified that he contacted a private lawyer and his company lawyer and that both lawyers provided him with a copy of the Illinois Human Rights Act. He then called Lois Rackow and stated that he thought they could be in violation of the law by refusing to rent him an apartment. Her response was that he should not "push it" and then hung up on him. He contacted the Department of Human Rights, where he was referred to a Mr. Trevino.

Lois Rackow, initially called as an adverse witness, testified that she had no subsequent conversation with Myron Podgurski where he allegedly told her that a refusal to rent an apartment would be a violation of the law. She testified that although she had told Trevino during a telephone conversation on October 16, 1980, that no determination had been made on Myron Podgurski's rental application, she told Trevino this because she did not know to whom she was speaking and she does not discuss her clients with just anybody over the telephone. She did not recall mentioning to Trevino the rental policy of the apartment complex.

Lois Rackow was later recalled and testified that the first time she had met Myron Podgurski was on October 9, 1980, when he filled out his rental application. She stated that she asked him if he had any children because of the fact that he had indicated on his application that he was divorced. He responded that he did have eight children and that his children occasionally would be staying with him on weekends and also during summer vacation. He further indicated that he was divorced at this time. He never indicated that he was separated and

only in the process of becoming divorced. Four or five days later, she received a telephone call from Trevino. She testified that at the time of this call, a determination had been made on his application, which was that he would not be allowed to rent an apartment. She also noted that Podgurski had indicated to her that he might possibly have three or four of his children staying with him for the whole summer and that she recalled telling him that there would be problems renting to him because of the visitation rights he had with his younger children.

John L. Rackow, Jr., testified that he is the manager of Water's Edge Apartments. He stated that as of October 1980, he had managed the Water's Edge Apartments for 8½ years. Mr. Rackow also indicated that the property consisted of five acres of land located in Lake Zurich, with two buildings having 33 units each.

Rackow also testified that in October 1980, only he had authority to review and pass upon applications for tenancy in the buildings and that the sales force of his Century 21 office would show apartments as independent contractors and receive a leasing fee for doing so. He testified that he and his wife, Lois Rackow, would show apartments as well as his sales force, although it was he who had authority to take and receive rental applications from prospective tenants at that time; however, his wife occasionally would do it.

Mr. Rackow further stated that he probably saw Podgurski's application, dated October 9, 1980, within a couple days thereafter, but that he had not become aware of Podgurski's interest in the Water's Edge Apartments until after he saw his application. Podgurski subsequently called him to discuss the rental application and asked if they were going to rent him an apartment. Rackow responded that they would not because the rental application was a falsification. He explained to Podgurski that the application had indicated zero children, whereas he knew that there were more than zero children from his discussions with his wife. He also testified that there had been a rental policy since 1971 or 1972 at Water's Edge Apartments in which a renter of a two-bedroom unit was permitted to have one child under the age of five years and, further, that no children were allowed in a one-bedroom unit and that no exceptions to this policy had ever been made over the years. In October 1980, there were at least five children under the age of five years living at the Water's Edge Apartments. Finally, Rackow explained that the first time he became aware of the existence of the Illinois Human Rights Act was when he received a copy of the Act along with a complaint from the Human Rights Commission in late October 1980.

The affidavit of Jose Trevino was introduced into the record by

stipulation of the parties, and it indicated that he was employed as an investigator for the Department of Human Rights; that he received a telephone call from Myron Podgurski on October 16, 1980, during which Podgurski stated that the owners or agents of Grant Associates, Inc./Century 21 in Lake Zurich had refused to lease an apartment to him because of his eight children, several of whom were under 14 years of age and would be visiting him from time to time; that Podgurski had requested that he telephone Grant Associates, Inc., and inform them that their action was in violation of the Illinois Human Rights Act; that he telephoned Lois Rackow on October 16, 1980, who stated that she would refuse to rent Myron Podgurski an apartment; that he inferred from Lois Rackow's statements and tone of voice that her refusal was based on Podgurski's actions in opposing the exclusion of his children as discriminatory; that Lois Rackow stated it was the policy of Grant Associates, Inc., to restrict the number of children residing in a two-bedroom apartment to one and further to require that any such children be under the age of five years; and that Lois Rackow had stated that this policy would apply to visiting children because her tenants did not want "children running around."

On July 22, 1982, the administrative law judge filed his recommended order and decision with the Human Rights Commission which, among other things, found that the policy did not have a disparate impact upon separated or divorced persons and that plaintiffs did not refuse to rent to Podgurski because he filed a charge of civil rights violation. Administrative Law Judge Gerl also found the testimony of John Rackow, Jr., concerning his reasons for refusing to lease to Podgurski to be "not credible," and that falsification on the rental application was not the reason Podgurski was unable to obtain a lease at Water's Edge. Finally, addressing plaintiffs' contention that section 3—104(A) of the Illinois Human Rights Act is overbroad, vague, and ambiguous, the administrative law judge stated that if plaintiffs were to prove that they failed to rent to a prospective tenant because of space limitations, they would not be in violation of the Act, in that failure to rent because of special limits is not equivalent to failure to rent to people with children, and a reasonable limitation on the number of individuals in a unit based upon the size of the unit would not violate the Act; however, such a hypothetical situation was not presented by the facts. The policy was not proved by plaintiffs to be based on special limitations, but on the blanket exclusion of children which violates section 3—104(A) of the Illinois Human Rights Act. Administrative Law Judge Gerl awarded Podgurski $500 as damages and dismissed the remaining two counts.

Each side filed exceptions to the recommended order and decision, and on November 22, 1982, the Human Rights Commission issued its order and decision. The Commission affirmed and adopted the decision and recommended order of the administrative law judge with the following modifications: the Commission found that section 3—104(A) was remedial legislation which must be construed liberally to effect its purpose, was both clear and unambiguous, and the Commission reduced the award of damages to $300. The Commission then entered its decision ordering the payment of damages, the immediate halt of the application of the policy, and the extension of a lease by plaintiffs to Podgurski. It also required Podgurski to submit a petition and supporting affidavit for attorney fees to the extent that he prevailed in this matter.

Podgurski filed his petition for costs, expenses, and attorney fees. Plaintiffs filed their response to this petition challenging the amount and basis of the attorney fees. On April 15, 1983, the Commission ordered the matter remanded back to Administrative Law Judge Gerl to determine the appropriate amount of attorney fees to be awarded. The parties agreed, however, to allow Gerl to resolve the matter without an evidentiary hearing. On September 22, 1983, Gerl filed his recommended order finding that $75 per hour was a reasonable fee given Podgurski's counsel's experience and expertise in the civil rights field. Specifically addressing the total hours spent, he noted that plaintiffs contested 12 entries in the petition as being unreasonable. He agreed with three of these objections and reduced the number of hours requested from 67.09 to 61.93. Additionally, while Podgurski's counsel did not request it, the administrative law judge applied a multiplier of 1.5 to insure that reasonable attorney fees were awarded, as this was a case of first impression before the Human Rights Commission. He noted that the amount of attorney fees may be large as compared with the relatively small amount of monetary damages, but justified his decision because this was a case of first impression and because the uniqueness of Illinois law under these circumstances required extensive research and analysis.

On January 30, 1984, the Human Rights Commission entered its order and decision agreeing with Administrative Law Judge Gerl's determination that Podgurski's attorney was entitled to a $75-per-hour fee and had expended 61.93 hours in this matter. The Commission, however, disagreed with the application of the 1.5 multiplier and set forth its reasons. It then ordered plaintiffs to pay $4,644.75 as reasonable attorney fees and stated that this order, along with its November 22, 1983, order, constituted its final order in the matter.

On November 4, 1985, after hearing the arguments of the parties, the trial court entered its order finding that there was no evidence to support plaintiffs' contention that the finding of the Human Rights Commission was against the manifest weight of the evidence or that it acted arbitrarily in clear abuse of its discretion; that a statute is not rendered unconstitutionally vague merely because a hypothetical situation can be conjured up which places the meaning of some terms of the statute in question; that a statute is presumed valid and the burden is on the party challenging the statute to establish its constitutional invalidity; and that plaintiffs failed to meet this burden to establish the unconstitutional nature of section 3—104(A) of the Illinois Human Rights Act as applied to them.

■■ ■ Plaintiffs' first contention is that section 3—104 of the Illinois Human Rights Act is unconstitutional because (1) it is vague and overbroad, and (2) it violates due process as an unreasonable exercise of the State's police power.

Section 3—104 of the Illinois Human Rights Act, unofficially known as "Exclusion of children in the rental of real estate," provides:

"It is a civil rights violation for the owner or agent of any housing accommodation to:

(A) Require, as a condition precedent to the rental of a housing accommodation, that the prospective tenant shall not have, at the time the application for rental is made, one or more children under the age of 14 years residing in his or her family; or

(B) Insert in any lease or agreement for the rental of any housing accommodation a condition terminating the lease if there shall be one or more children under the age of 14 in the family of any person holding the lease and occupying the housing accommodation.

Any agreement or lease which contains a condition of the type described in this Section is void as to that condition." (Ill. Rev. Stat. 1981, ch. 68, par. 3—104.)

As noted by the parties and the decision-making authorities below, this is the first constitutional challenge to this section of the Illinois Human Rights Act. Its predecessor, sections 37 and 38 of chapter 80 (Ill. Rev. Stat. 1979, ch. 80, pars. 37, 38), made it a petty offense to discriminate against tenants having children under the age of 14 years. This was repealed in 1981.

Plaintiffs contend that section 3—104, as written, is vague and overbroad because it fails to set forth the maximum limitation on the number of people who will be permitted to rent a certain size apartment, thereby creating a possible health code violation, and because it

ignores the demand for available housing suited for the special needs of either singles or senior citizens. They argue that the more modern State statutes provide exemptions for landlords to specifically design their units to allow only a certain type of person to reside there.

A statute is unconstitutionally vague if its terms are so indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application. (*Fagiano v. Police Board* (1983), 98 Ill. 2d 277, 282, 456 N.E.2d 27; *People v. Gurell* (1983), 98 Ill. 2d 194, 207, 456 N.E.2d 18.) To hold a statute unconstitutionally vague, its terms must be so ill-defined that their meaning will be determined by the opinions and whims of the trier of fact rather than by any objective criteria. (*People v. Wawczak* (1985), 109 Ill. 2d 244, 249, 486 N.E.2d 911; *People v. Greene* (1983), 96 Ill. 2d 334, 338-39, 450 N.E.2d 329.) Vague laws may trap the innocent by not providing fair warning of their prohibitions. (See *People v. Bossie* (1985), 108 Ill. 2d 236, 240-41, 483 N.E.2d 1269.) A statute, however, does not violate due process on grounds of vagueness if the duty or obligation imposed by the statute is prescribed in terms definite enough to serve as a guide to those who must comply with it. (*Fagiano v. Police Board* (1983), 98 Ill. 2d 277, 282, 456 N.E.2d 27.) There is a strong presumption of the constitutionality of a statute, and the burden of demonstrating its invalidity is on the parties challenging it. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227, 497 N.E.2d 763; *Quinn v. Donnewald* (1985), 107 Ill. 2d 179, 194, 483 N.E.2d 216.) Further, the mere possibility that a situation could arise that would raise serious constitutional questions cannot be used to invalidate a statute. See *People v. Caffrey* (1983), 97 Ill. 2d 526, 529, 455 N.E.2d 60.

■ When section 3—104(A), the section which plaintiffs were found to have violated, is examined in light of the facts disclosed at the administrative hearing, it is clear that the statute is not impermissibly vague. The statute makes it clear that a landlord cannot deny the rental of a unit to a prospective tenant simply because the prospective tenant has a child under the age of 14 years residing in his family. Plaintiffs assert that if it they had offered Podgurski a lease, they would have violated local building codes because eight children would have been living with Podgurski in the two-bedroom apartment. This, they contend, would have allowed an unlimited number of tenants in a small and confined area contrary to provisions of the Lake County Building Code.

This argument that the statute forces them to violate other ordinances is not supported by the facts, as there was no evidence presented which indicated Podgurski's eight children would be residing

with him. The evidence was that two or three of the children might visit the apartment for a weekend and might stay for a part of the summer. No evidence was adduced below by plaintiffs that the statute, as applied, would cause them to be in violation of the specific building ordinances of Lake County referred to for the first time in this appeal. Plaintiffs also have failed to demonstrate that the complex was specifically designed to accommodate only singles or senior citizens. In fact, there was evidence submitted to show that there were some children under the age of five years living in the complex. On the facts in this record, plaintiffs have failed to meet their burden to overcome the strong presumption of the constitutionality of the statute.

 Plaintiffs also contend that section 3—104 is an unreasonable exercise of police power. They maintain that forcing a landlord to rent a two-bedroom apartment to a man with eight children has no rational relationship to the promotion of the health, comfort, safety, or welfare of society. While plaintiffs also state that the exemptions enumerated in section 3—106 create unequal treatment under the law, this point is merely asserted in their brief without citation of authority and was not presented below. We need not consider this latter contention as it is waived for failure to present a reasoned argument with citation of authority (see *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 419, 255 N.E.2d 900) and in advancing an issue for the first time on review (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313, 335 N.E.2d 448).

As recently noted by our supreme court, the starting point for any due process analysis is the selection of the proper test to be applied to the challenged statute. When the statute under consideration does not affect a fundamental constitutional right, the appropriate level of scrutiny is the rational-basis test; whereas, if the statute impinges upon a fundamental right, a court should subject the legislation to strict scrutiny. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 367-68, 489 N.E.2d 1374.) It is not alleged that section 3—104 impinges on a fundamental right or liberty, and plaintiffs do not argue that strict scrutiny should be applied.

 Under the rational-basis test, the relevant inquiry is whether section 3—104 of the Illinois Human Rights Act bears a rational relationship to a legitimate government interest. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 368, 489 N.E.2d 1374; *Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 509, 470 N.E.2d 266.) It was explained in *Harris*:

" '[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an

evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

The day is gone when this court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.' " (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 368-69, 489 N.E.2d 1374, quoting *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 487-88, 99 L. Ed. 2d 563, 572, 75 S. Ct. 461, 464.)

In most cases involving substantive challenges to statutes, the court gives substantial deference to the legislative enactment. (See *People v. Kohrig* (1986), 113 Ill. 2d 384, 397, 498 N.E.2d 1158.) A large discretion is necessarily vested in the legislature to determine not only what the interests of public convenience and welfare require, but what measures are necessary to secure such interests. (*Ostergren v. Forest Preserve District* (1984), 104 Ill. 2d 128, 133, 471 N.E.2d 191.) Again, there is a strong presumption of constitutionality of a statute and the burden is on the parties challenging it. *Bernier v. Burris* (1986), 113 Ill. 2d 219, 227, 497 N.E.2d 763; *Quinn v. Donnewald* (1985), 107 Ill. 2d 179, 194, 483 N.E.2d 216.

■ In this case, the legislature implemented a law to prevent discriminatory practices in housing facilities against people with children. The purpose is to protect the family interest and promote equal treatment in society. The need for this was seen as far back as 1909, when the legislature initially implemented sections 37 and 38 making the exclusion of people with children from housing a criminal offense. (Ill. Rev. Stat. 1979, ch. 80, pars. 37, 38.) While the Illinois judiciary has not had cause to rule on the constitutionality of such a prohibition (see *People v. Metcoff* (1946), 392 Ill. 418, 64 N.E.2d 867 (where the supreme court expressly declined to discuss the constitutionality of the predecessor of section 3—104)), our supreme court did express its agreement with the idea that a limitation on the number of families in an area was against public policy. (See *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 116-17, 324 N.E.2d 406.) The court has also noted the need to avoid all types of housing discrimination. (See *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 541-42, 224 N.E.2d 793.) Other States have enacted similar statutes to prevent discrimination based on family status. See Alaska Stat. secs. 18.80.200, 18.80.240(2) (1986); Ariz. Rev. Stat. Ann. sec. 33—1317 (1986); Del. Code Ann. tit. 25, sec. 6503 (1975 & Supp. 1986); Me. Rev. Stat. Ann. tit. 14, sec. 6027 (Supp. 1986); Mass. Gen. Laws Ann. ch.

151B, sec. 4(11) (West Supp. 1986); N.J. Rev. Stat. secs. 2A: 42—101, 2A: 42—102 (1986).

Plaintiffs, while raising a legitimate interest in the right to use their property as they see fit, are unable to demonstrate that their personal property rights outweigh the public need of assuring fair and equal housing opportunities and avoiding discrimination on the basis of family status. Additionally, the legislature has seen fit to enact exemptions for those who have demonstrated a need for a separate and exclusive type of housing and to avoid forcing owners to live in undesirable situations. See Ill. Rev. Stat. 1985, ch. 30, par. 304.1(c) (which provides that a condominium association may limit ownership to persons over 55 years of age without violating article 3 of the Illinois Human Rights Act).

While plaintiffs contend that they are forced by the statute to rent a two-bedroom apartment to a man with eight children, which bears no rational relationship to the promotion of the health, comfort, safety, or welfare of society, we must point out that the statute does not provide this; nor was the statute being applied to accomplish this alleged result. Plaintiffs merely use this argument, not supported by the evidence, to attempt to justify their argument alleging a due process violation. Such a contention on this record is meritless.

As plaintiffs have been unable to overcome the strong presumption of the validity of section 3—104 of the Illinois Human Rights Act, they have not met their burden and must fail on this due process contention.

■ Plaintiffs' next contention is that the decision of the trial court to affirm the administrative agency's order is against the manifest weight of the evidence because: (1) Podgurski failed to produce any evidence that he had advised the Rackows that he had children under the age of 14 years in order for plaintiffs to have knowingly discriminated against his children, (2) the evidence established that plaintiffs could have properly rejected Podgurski's application as plaintiffs could have been subjected to housing code violations by allowing eight children to live in a two-bedroom apartment, and (3) Podgurski acknowledged that his rental application contained falsified information. Defendants respond that plaintiffs are simply refashioning previously uncontested facts and that there is sufficient evidence in the record to support the order of the Human Rights Commission.

According to section 8—111(A) of the Illinois Human Rights Act, review of a decision of the Human Rights Commission must be in accordance with the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*). (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(A).)

Section 3—110 of the Administrative Review Law provides that the findings and conclusions of an administrative agency on questions of fact are to be held *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110; *Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372, 498 N.E.2d 1148; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085.) The function of a reviewing court is to determine whether the agency's decision is against the manifest weight of the evidence. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879; *Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 392, 472 N.E.2d 434.) If the issue is merely one of conflicting testimony and credibility of witnesses or testimony, the agency's determination should be sustained. (*Department of Corrections v. Adams* (1986), 146 Ill. App. 3d 173, 181, 496 N.E.2d 1138.) A reviewing court should not reweigh the evidence or make independent determinations of facts so long as the findings are based on substantial evidence. *Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 373, 498 N.E.2d 1148; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085.

■ A review of the record demonstrates that there was sufficient evidence presented to the administrative law judge to sustain the finding that plaintiffs violated Podgurski's civil rights under section 3—104(A) of the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, par. 3—104(A)) by refusing him a lease at Water's Edge Apartments because he had children under the age of 14 years. It is uncontested that the owners maintained an oral policy under which no children were permitted in the one-bedroom units and only one child under the age of five years was permitted in the two-bedroom units. While John L. Rackow, Jr., testified that he refused to lease an apartment to Podgurski because his rental application contained falsifications, this was testimony which the administrative law judge found to be "not credible." Testimony by Lois Rackow and Podgurski, as well as the affidavit of Jose Trevino, indicated that the reason Podgurski was not leased an apartment was because his younger children occasionally visited him overnight. Although the specific ages of the younger children were not given to Lois Rackow, it is evident that she believed the children to be over the age of five years and not allowed in a two-bedroom apartment under the rental policy of plaintiffs. While plaintiffs again argue that they could have properly rejected Podgurski as a tenant because eight children in the apartment would be a violation of the housing code, this was not the basis of the refusal to rent, nor was there evidence that all these children would be residing there. This appellate argument appears to be an afterthought and was not one of the issues

on which evidence was presented before the administrative law judge. Plaintiffs' interpretation of the facts here on appeal finds no support in the record and is not persuasive. The decision of the circuit court of Lake County affirming the order of the Human Rights Commission is not against the manifest weight of the evidence.

■ Plaintiffs' next contention is that the trial court's decision affirming the award of $4,644.75 in attorney fees is against the manifest weight of the evidence because the award was grossly excessive when compared with the compensatory award of $300, because Myron was earning $43,000 per year at the time of the alleged offense and could pay his own attorney fees, and because the lease was refused on the basis of a falsified rental application. Plaintiffs also argue that the time alleged to have been spent by the attorney is exaggerated and unreasonable. Plaintiffs have not contended that the hourly rate awarded was excessive, and we need not consider that factor in determining the issue before us. (See *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299, 483 N.E.2d 1229.) In support of their position, plaintiffs cite to the eight factors to be considered in determining a reasonable fee as set forth in DR 2—106 of the Illinois Code of Professional Responsibility (87 Ill. 2d R. 2—106). Defendants respond that the fees are reasonable under the six-point analysis of factors to be considered in the setting of an attorney fee award as set forth by the Human Rights Commission and argue that the award is not against the manifest weight of the evidence.

The general rule in Illinois is that attorney fees are not recoverable by a successful litigant from his adversary in a civil action unless expressly provided for by statute. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 488-89, 426 N.E.2d 1204; *Anderson v. Ferris* (1984), 128 Ill. App. 3d 149, 156, 470 N.E.2d 518.) Section 8—108(G) of the Illinois Human Rights Act, however, expressly provides for the awarding of reasonable attorney fees or a portion thereof by the Human Rights Commission as part of the relief granted to a person whose civil rights have been found to be violated. (Ill. Rev. Stat. 1983, ch. 68, par. 8—108(G).) A reviewing court will not vacate an award of attorney fees absent a showing of an abuse of discretion in making the award. *Loyola University v. Human Rights Com.* (1986), 149 Ill. App. 3d 8, 22-23, 500 N.E.2d 639.

■ The amount of the award of attorney fees depends upon whether the work was reasonably required and necessary for the proper performance of the legal services under the circumstances. (See *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 916-17, 483 N.E.2d 692; *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102,

110-11, 468 N.E.2d 490; *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1093, 412 N.E.2d 1336.) The criteria generally utilized for determining whether a statutory award of fees is reasonable include the skill and standing of the attorney, the nature of the controversy, the difficulty and novelty of the issues in the case, the importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required to be expended on the case, the customary charge in the community, and the benefits resulting to the client. (See *In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 35, 500 N.E.2d 612; *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 917, 483 N.E.2d 692; *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 111, 468 N.E.2d 490; *In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 41, 429 N.E.2d 594.) Many of these factors are the same as are contained in DR 2—106 (87 Ill. 2d R. 2—106) pertaining to fees for legal services rendered in an attorney-client relationship and those utilized by the Human Rights Commission.

The question of the attorney fees awarded here was largely one of fact. Podgurski's attorney filed her affidavit of hours spent listing the amount of time spent, the legal services rendered, and the dates the services were performed. Plaintiffs filed a response taking exception to certain portions of the petition requesting fees and listing specific objections to some of the legal services rendered and the time allegedly spent on performing legal duties. An evidentiary hearing on the petition for attorney fees was waived by plaintiffs, and the administrative law judge made a determination from the petition and response that 61.93 hours were reasonably spent by Podgurski's attorney in the matter, that the case was one of first impression, and that the attorney possessed special expertise in the field of discrimination law. He ruled that three of plaintiffs' objections to the fee petition were valid and overruled nine additional objections. The administrative law judge also found that extensive research and analysis were necessary, that the issues were unusually difficult and time consuming, and that the attorney's skills in this area were impressive. The Commission affirmed the finding that 61.93 hours were expended by the attorney and, applying a $75-per-hour fee, awarded $4,644.75 as reasonable attorney fees.

■ There was sufficient evidence in the record that the attorney devoted the hours charged. While the compensatory damages were only $300 and were disproportionate to the attorney fee award, the success of the litigation was a significant victory because it awarded Podgurski the right to rent the apartment in question and won a cease and desist order against plaintiffs. (See *Board of Trustees of the Uni-*

*versity of Illinois v. Human Rights Com.* (1985), 138 Ill. App. 3d 71, 76-77, 485 N.E.2d 33.) Attorney fees awarded in this type of litigation are necessary to ensure proper representation of complaints before the Human Rights Commission and to enforce the important public policies in the Illinois Human Rights Act. The fact that Podgurski was earning $43,000 per year and may be able to pay his own attorney fees in whole or in part was not developed below, nor do we believe that, even assuming he could pay his fees, there was an abuse of discretion in awarding fees under these circumstances.

■■■ Finally, plaintiffs object to Podgurski's attorney's inclusion in her request for fees the time spent to prepare the petition for attorney fees, which was listed as 2½ hours and was awarded to the attorney. We have not been cited to any authority by plaintiffs to support their argument opposing the award of fees for this purpose. The statute authorizes generally the awarding of attorney fees, and, as plaintiffs' actions in violating the Act necessitated the hiring of an attorney and the incursion of fees, we find no abuse in the decision to award fees for preparation of the petition for attorney fees.

■■■ Plaintiffs' last contention on appeal is that the trial court's judgment against both Lois Rackow and Century 21/Grant Associates, Inc., is against the manifest weight of the evidence because the evidence failed to establish that either Lois Rackow or Century 21/Grant Associates, Inc., had acted as agents for the owners of Water's Edge Apartments. They maintain that the only evidence concerning this issue was presented in the testimony of John Rackow, Jr., where he specifically denied that he was acting in any capacity for Century 21/ Grant Associates, Inc., and where he specifically stated that Century 21/Grant Associates, Inc., employees acted as independent contractors, and that he, and not Lois, had the responsibility for reviewing lease applications.

Defendants initially argue that plaintiffs' failure to present this contention at the administrative proceedings and before the trial court has waived this issue for review. In addition, addressing the substance of plaintiffs' contention, defendants argue that plaintiffs stipulated to both Lois Rackow's and Century 21/Grant Associates, Inc.'s, involvement in leasing apartments at Water's Edge Apartments, thereby showing that there was ample evidence to support the findings of the circuit court.

The general rule is that defenses or issues not raised before an administrative agency may not be considered on review. (See *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38-39, 481 N.E.2d 664; *Commonwealth Edison Co. v. Department of Local*

*Government Affairs* (1984), 126 Ill. App. 3d 277, 291, 466 N.E.2d 1351.) Plaintiffs raise this contention as a basis for partial reversal of the trial court's order affirming the administrative agency's decision for the first time in this court. While the waiver rule is not absolute (see *Cotovsky v. Department of Registration & Education* (1982), 110 Ill. App. 3d 417, 423, 442 N.E.2d 520), under the circumstances of this record, the waiver rule will be enforced.

 Even were we to consider the substance of plaintiffs' contention, the evidence presented through uncontested facts and testimony is, at best, conflicting on this issue. While John Rackow, Jr., stated that he acted as manager of Water's Edge Apartments in an individual capacity and not as an agent of Century 21/Grant Associates, Inc., the complaint filed by the Department of Human Rights named Century 21/Grant Associates, Inc., as managing the apartment complex, and plaintiffs admitted this in their answer. Also, it was stated in plaintiffs' answer to interrogatories that Lois Rackow was one of two individuals responsible for managing the apartment complex. In addition, there is reference in Jose Trevino's affidavit to Grant Associates, Inc., as maintaining the policy in question at Water's Edge Apartments, which was uncontested by plaintiffs. As it is the sole function of the reviewing court to determine whether an administrative agency's decision is against the manifest weight of the evidence and not to reweigh the evidence (*Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372, 498 N.E.2d 1148; *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879), the order of the circuit court affirming the decision of the Human Rights Commission should not be reversed on this issue because there is sufficient evidence to hold Lois Rackow and Century 21/Grant Associates, Inc., responsible.

For the foregoing reasons, the order of the circuit court of Lake County affirming the decisions of the Human Rights Commission is affirmed.

Affirmed.

NASH and DUNN, JJ., concur.