199 Ill. App.3d 698 (1990)
557 N.E.2d 517
ARLINGTON PARK RACE TRACK CORPORATION et al., Respondents-Appellants,
v.
THE HUMAN RIGHTS COMMISSION et al., Petitioners-Appellees.
No. 1-88-2240.
Illinois Appellate Court  First District (2nd Division).
Opinion filed May 29, 1990.
Rehearing denied July 3, 1990.
*699 *700 LeMoine D. Stitt, of Stitt, Klein & Daday, of Inverness, for petitioner.
Colleen K. Connell, of Roger Baldwin Foundation of American Civil Liberties Union, Inc., and Bret A. Rappaport, of Schwartz, Cooper, Kolb & Gaynor, Chartered, both of Chicago, for respondents.
Order affirmed.
JUSTICE BILANDIC delivered the opinion of the court:
Arlington Park Race Track Corporation (Corporation) and Arlington Park Racetrack, Ltd. (Limited), respondents, request this court to *701 review an order of the Illinois Human Rights Commission (Commission), petitioner. The principal effect of the order of the Commission results in the application of the Illinois Human Rights Act to the respondents. Ill. Rev. Stat. 1981, ch. 68, par. 3-104(A).
Since 1982, this litigation has been before the Commission, the circuit court of Cook County, and this court. The prior history is set out in People ex rel. Department of Human Rights v. Arlington Park Race Track Corp. (1984), 129 Ill. App.3d 584, 472 N.E.2d 547, and People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp. (1984), 122 Ill. App.3d 517, 461 N.E.2d 505.
The underlying action originated on May 6, 1982, with the filing of charges with the Illinois Department of Human Rights (Department) by certain backstretch workers alleging that the Corporation's policy of prohibiting children of backstretch workers under the age of 14 from residing in the backstretch area violates section 3-104(A) of the Illinois Human Rights Act (the Act) (Ill. Rev. Stat. 1981, ch. 68, par. 3-104(A)). Shortly thereafter, the Department filed a complaint with the Illinois Human Rights Commission.
The complainants are backstretch workers who live in an area set aside for them on the grounds of the Arlington Park Race Track. At the time of the events which gave rise to the complaint, the race track and the property surrounding it was owned by respondent Corporation. Respondent Limited currently holds the legal title to the real property which contains the housing at issue in this case, and Limited has been found to be the successor or assignee of the Corporation.
The race track, which is located within the village limits of Arlington Heights, operates from May through September of each year and has traditionally provided dormitory housing facilities in an area of the track commonly known as the backstretch for certain employees of trainers who have horses stabled at the track during the five-month racing season. The dormitories consist of more than 600 rooms ranging in size from 80 to 206 square feet, the larger rooms being designated for double occupancy, and the smaller for single occupancy. None of the rooms are equipped for cooking, and most are served by communal washroom and shower facilities. The rooms were allocated, without cost except for a refundable $75 damage deposit, to the trainers, who in turn assigned them, also without cost, to persons employed by them to care for the horses. The track also maintained 16 two-bedroom trailers in an area removed from the backstretch, ostensibly for rental at a rate of $300 per month to those employees who were accompanied to the track by their families. For a number of racing seasons prior to 1982, an average of 20 to 30 families, including 30 to 40 young children, *702 lived in the dormitories on the backstretch, allegedly because off-track housing and on-track trailer-housing was either unaffordable or unavailable.
Although it appears that for several years the Corporation was aware that children were living in the dormitories on the backstretch, it took no action to remove or bar them therefrom until April 1982, when it notified the trainers that no children would be permitted to reside there during the 1982 racing season. 129 Ill. App.3d at 586-87.
Complainants allege that they have been adversely affected by the Corporation's decision because the exclusion of children from the facilities violates section 3-104 of the Act. (Ill. Rev. Stat. 1981, ch. 68, par. 3-104.) That section provides as follows:
"§ 3-104. Exclusion of Children in the Rental of Real Estate. It is a civil rights violation for the owner or agent of any housing accommodation to:
(A) Require, as a condition precedent to the rental of a housing accommodation, that the prospective tenant shall not have, at the time the application for rental is made, one or more children under the age of 14 years residing in his or her family; or
(B) Insert in any lease or agreement for the rental of any housing accommodation a condition terminating the lease if there shall be one or more children under the age of 14 in the family of any person holding the lease and occupying the housing accommodation.
Any agreement or lease which contains a condition of the type described in this Section is void as to that condition." (Ill. Rev. Stat. 1981, ch. 68, par. 3-104.)
In defense, respondents primarily allege that the facilities are not "housing accommodations" within the meaning of section 3-104 of the Act, and that the terms and conditions under which backstretch workers obtain occupancy of the facilities do not constitute "rental of housing accommodations" under section 3-104.
Respondents also argue that children are prohibited from living in these facilities by the housing code of the Village of Arlington Heights, and by the rules of the Illinois Racing Board. Since the respondents must comply with both the Arlington Heights housing code and the Racing Board rules, they argue that it was a legitimate, nondiscriminatory reason to exclude children from the facilities.
The recommended order and decision by the administrative law judge was issued on February 20, 1985. It required the Corporation and Limited to cease and desist from refusing to provide housing to backstretch workers because they have children; to pay $2,000 to each *703 of two complainants for damages suffered; and to pay complainants' attorney fees. On March 30, 1988, the Commission affirmed the recommended decision and ruled that backstretch facilities at the race track were a "rental of housing accommodations," and that the policy of the Corporation and its successor, Limited, of excluding children from that housing violated section 3-104 of the Act. This appeal followed.

I
 1 We are required to sustain the Commission's findings of fact unless "such findings are contrary to the manifest weight of the evidence." (Ill. Rev. Stat. 1987, ch. 68, par. 8-111(A)(2).) After a careful review of the record, we conclude that the Commission's finding are supported by the evidence. In addition, there is no significant factual dispute. The assignments of error deal with the Commission's interpretation and application of the Act.
Illinois was among the first States to respond to the widespread national problem of the exclusion of families with minor children in the rental of housing by enacting the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, par. 101 et seq.).
In 1982, when the alleged housing discrimination occurred, there was a Federal statute dealing with housing discrimination on the basis of race, color, religion, or national origin. (The Fair Housing Act of 1968, Pub. Law 90-284, 82 Stat. 81 (codified at 42 U.S.C. §§ 3601 through 3631 (1976)).) The Federal Act did not specifically address discrimination against minor children. This resulted in conflicting interpretations of the Federal statute regarding its application where children were involved. Because of this conflict, complainants elected to pursue their remedy under the Illinois Act, rather than by way of a Federal action.
Since 1982, all doubt about the applicability of the Federal statute was removed with the enactment of the Fair Housing Act of 1988, which specifically included children. (42 U.S.C. § 3606 (1976).) Now there is a uniform policy prohibiting discrimination against children in the rental of housing accommodations under both Illinois and Federal law.
 2 It is apparent that the Illinois Human Rights Act is remedial legislation. In fashioning the remedy, the legislature provided for certain exemptions. (Ill. Rev. Stat. 1981, ch. 68, par. 3-106.) The backstretch facilities at issue in this case do not come within any exemption. Respondents did not assert any exemption before the Commission or before this court. Since the Act is remedial legislation, it must be construed liberally to give effect to its purposes. See Rackow v. Human *704 Rights Comm'n (1987), 152 Ill. App.3d 1046, 1059, 504 N.E.2d 1344, appeal denied (1987), 115 Ill.2d 550.
Section 3-104 of the Human Rights Act prohibits discrimination against families with children under the age of 14 with respect to the rental of "housing accommodations." The term "housing accommodations" is defined in section 3-101(C) of the Act as follows:
"(C) Housing Accommodations. `Housing accommodation' includes any improved or unimproved real property, or part thereof, which is used or occupied, or is intended, arranged or designed to be used or occupied, as the home or residence of one or more individuals." Ill. Rev. Stat. 1981, ch. 68, par. 3-101(C).
Respondents contend that the backstretch facilities are not "housing accommodations" within the purview of the Act. Even if this court determines that the facilities are "housing accommodations," their occupancy by the backstretch workers with children under 14 did not constitute the "rental of a housing accommodation" under section 3-104(A). Respondents conclude that the Commission's order to the contrary is erroneous and requires reversal. We disagree.

A
It is important to note that the definition of "housing accommodation" is in the alternative. It includes property which is "used or occupied * * * as the home or residence"; or, in the alternative, property which is "intended, arranged or designed to be used or occupied, as the home or residence of one or more individuals." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 68, par. 3-101(C).
 3 The record reveals that the backstretch facilities, from the very outset of the track operation, were designed, arranged and used as a place for backstretch workers to live. They were not designed or used as a barn, stable, or storage area. During the racing season, the workers "used" or "occupied" the facilities with their children as their "home." When the respondents prohibited children in 1982 and expressed a preference for families without children, they came in conflict with section 3-104.
Respondents' reliance on cases defining the term "residence" is misplaced. It ignores the fact that the Act applies to a "home or residence." In addition, all of the cases cited deal with other statutes with different compelling governmental purposes, such as voting rights, divorce or eligibility for employment as a police officer. Clearly, they do not apply to effectuate the purposes of the Human Rights Act.
Neither party has been able to cite a case dealing with the specific interpretation of the Human Rights Act at issue in the case at bar. The *705 only case which we were able to find is Serpas v. Schmidt (7th Cir.1987), 827 F.2d 23, cert. denied (1988), 485 U.S. 904, 99 L.Ed.2d 234, 108 S.Ct. 1075. That case involved backstretch workers who lived in the backstretch facilities of Arlington Park which, by coincidence, are the same facilities that are involved in the case at bar. The backstretchers sought to enjoin the Illinois Racing Board from conducting a warrantless search of their living quarters. In affirming the district court's injunction, the court of appeals stated:
"We agree with the district court that these on-track dormitory rooms must be considered the backstretchers' `homes' for Fourth Amendment purposes. Appellants point out that the rooms are very small and located either adjacent to or above the stables in the backstretch of the track. Further, they are only temporary lodgings and are accessible to track authorities by a master key. Nonetheless, they are exclusively residential, and lodgings as cramped, inhospitable or temporary have been considered residences by the courts. [Citations.] * * * Given the legal protection historically afforded the home by the Fourth Amendment, see e.g., United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972) (`physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed'), we will not assume that the Illinois legislature meant to authorize warrantless residential searches unless it clearly stated this intention." 827 F.2d at 28-29.
Horse racing is one of the most regulated industries in this State. The legislature is keenly aware of its operations and the fact that backstretch workers are an integral part of a track operation. If the legislature wanted to exclude the housing facilities provided at the track from the Human Rights Act, it could have easily accomplished that purpose.
We therefore conclude that the legislature intended to include these facilities as "housing accommodations" under the Act, and that backstretch facilities are "housing accommodations" under the Act.

B
Having determined that the backstretch facilities are "housing accommodations" under the Act, we now consider respondents' fall-back position that there was no "rental" of housing accommodations within the purview of section 3-104.
The term "rental" is not defined in the Human Rights Act or in any case interpreting the Act. However, the Federal Fair Housing Act *706 of 1968, which is the Federal counterpart of our Act, provides some direction, although not binding on this court:
"(e) `To rent' includes to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." 42 U.S.C. § 3602 (1976).
 4 In the traditional sense, rent is compensation paid for the use of land, or consideration paid for the use or occupancy of property. See Cottrell v. Gerson (1939), 371 Ill. 174, 181, 20 N.E.2d 74.
Respondents contend that there is no privity between the backstretch workers and the track because the track deals directly with the trainers. It is the trainers who deal directly with the backstretch workers. Therefore, there can be no "rental."
However, the findings of the administrative law judge, which were adopted by the Commission, clearly demonstrate the flaw of this reasoning.
These housing accommodations were built and are maintained by the track for occupancy by backstretch workers and their families. This continued practically from the time the track was built, until the track changed its policy about children in 1982. Limited, the successor to the Corporation, plans to continue the same policy. Although the track deals directly with the trainers, it is with the express knowledge and direction of the track that the housing accommodations are to be allocated by the trainers to their backstretch employees according to a formula based on the number of horses brought to the track by the trainer. The trainer does not pay any money to the track for these facilities and, in turn, the workers do not pay any money to the trainers. Nevertheless, in each case, it is considered compensation. Trainers do not personally live in the facilities nor are they available to the general public. The facilities are used only during the five-month racing meet and only by backstretch workers and their families. The backstretchers work seven days a week during the entire meet. It would be difficult, if not impossible, to conduct a racing meet without having backstretch workers living at the track in these housing accommodations.
 5 Under the facts of this case, we conclude that there is privity between the backstretch workers and the track in the nature of an assignment or sublease from the trainers to the backstretch workers, with the knowledge and consent of the respondents. The liberal construction of the Act, to effectuate its legislative purposes, requires this result. See Rackow v. Human Rights Comm'n (1987), 152 Ill. App.3d 1046, 1059, 504 N.E.2d 1344, appeal denied (1987), 115 Ill.2d 550.
Respondents do not deny that it is their policy to refuse to allow children to occupy the backstretch housing facilities. The order of the *707 Commission determining that respondents' conduct, under the facts of this case, constitutes a civil rights violation under the Act is correct.

II
Next, respondents argue that even if the facts constitute a violation of the Act, no liability should be imposed because the respondents demonstrated a legitimate, nondiscriminatory reason for refusing to allow children to live in the backstretch housing.
Respondents' argument appears to be based upon the Supreme Court's decision in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 36 L.Ed.2d 668, 93 S.Ct. 1817. In that case, the Court said that racial discrimination in employment could be inferred based upon circumstantial evidence. Respondent could rebut the inference by articulating a legitimate, nondiscriminatory reason for the employment action at issue. Once the reason was articulated, the complainant could prove his case by demonstrating that the reason was merely a pretext for discrimination.
This analysis has nothing to do with the facts of the instant case. Under McDonnell Douglas, a respondent explicitly denies discrimination and offers a legitimate, nondiscriminatory reason for the employment transaction at issue. In the case at bar, respondents admit that they are discriminating against families with children.
 6 Respondents argue that they do not discriminate against workers and their families but merely limit their prohibition to children. They claim their conduct was "rational." Respondents ignore the fact that they disregard a clear legislative act which makes it illegal to discriminate against children. This provision is related to a legitimate governmental purpose. (Rackow, 152 Ill. App.3d at 1059.) Respondents' argument must be rejected.
 7 Respondents admit that no ordinance of the village expressly prohibits children from living on the backstretch. They argue that such a policy is implicit in section 26-208(b), which requires that rooms on the backstretch "will be assigned only to persons listed on the Illinois Racing Board Stable Employment List." (Arlington Heights, Ill., Village Code, ch. 26, par. 26-208(b) (1979).) Since children under the age of 16 are not eligible for employment in the stable area, respondents argue, it is clear that they may not be allowed under this provision to live in the backstretch or stable area. This interpretation would appear to be inconsistent with section 26-202(m) of the Village Code, which provides that children over the age of one year and under the age of 12 years shall be counted as one-half persons for purposes of determining maximum occupancy of housing units at the track. (Arlington *708 Heights, Ill., Village Code, ch. 26, par. 26-202(m) (1979).) Such a provision would have been unnecessary if the village had indeed prohibited children from living on the backstretch. The occupancy limitations that applied to dorms constructed after 1979 do not dictate the exclusion of family members under the age of 14, but rather limit the number of persons who may occupy accommodations of a given size. Furthermore, several of the dorms in question were constructed prior to the enactment of this ordinance and are specifically excluded from its coverage. Thus, the Village Code does not require that respondents adopt the exclusionary policy at issue here, and compliance therewith does not require respondents to act in violation of the Human Rights Act.
Respondents also cite the rule of the Illinois Racing Board as a basis for its policy of excluding children. Rule 84 provides that race track workers must be licensed. (Codified at 11 Ill. Adm. Code § 1408.50 (1983).) These provisions do not, however, address the issue of who may live at the track. Although Rule 345 limits the entry to the backstretch area to licensed personnel, supervised children are allowed on the track during the day. (Codified at 11 Ill. Adm. Code § 1325.50(a) (1975).) Thus, the rules in question do not prohibit children from occupying the accommodations on the backstretch. The rules of the Board must be interpreted to comply with Illinois law. In the event of conflict, the Human Rights Act must prevail over the rules of the Illinois Racing Board.
 8 Finally, respondents contend that their concern for the health, safety and well-being of the children constitutes a legitimate, nondiscriminatory reason for their policy of excluding children from the backstretch housing. The record does not support this argument.
The record discloses that families with children have been residing on the backstretch for many years. The track has even funded some of the social programs for the children found at the track's community center. At the very least, the track provided space for these programs to operate, indicating an acquiescence to the children's presence on the part of the track. There is testimony that the backstretch compares favorably to urban low income areas, which obviously do not exclude children. The environmental hazards found in these urban areas are worse than those found at the backstretch. The density of the backstretch is about half that of West Garfield Park. Moreover, unlike the urban low income areas, the track provides a setting where there are on-site medical, dental, day-care, educational, and recreational facilities.
The respondents contend that children are unsafe residing on the *709 backstretch. Yet, respondents are unable to provide evidence of any horse-related injuries to a child under the age of 14. The parents of these children have voluntarily adopted their own rules to insure the safety of their children as they reside on the backstretch. There was no evidence of any disease transmitted by the horses to the backstretch children and no evidence of airborne or water disease on the backstretch.
The evidence does not support respondents' contention that they are excluding children under the age of 14 from residing in the backstretch housing because of a concern for the health, safety and welfare of these children.
We therefore conclude that respondents failed to establish any legitimate nondiscriminatory reason to avoid liability for their violation of the Act.

III
 9 We reject respondents' argument that damages awarded complainants Armstrong and Shannon for mental distress, embarrassment and emotional injury are not compensable under the Act. "`Actual damages' in the context of the [Human Rights Act] contemplates compensation for emotional harm and mental suffering caused by a violation of the [Human Rights Act]." Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n (1989), 184 Ill. App.3d 339, 355, 541 N.E.2d 1248, appeal denied (1989), 127 Ill.2d 612.

IV
Administrative Law Judge Gerl presided over the proceedings before the Commission during the presentation of evidence. Subsequent to the evidentiary hearings, but prior to submission of the post-hearing briefs, Judge Gerl resigned. He was replaced by Judge Patton, who authored the recommended order and decision ultimately adopted by the Commission. Respondents contend that, because of this substitution of judges, Judge Patton was unable to make the credibility assessments necessary to render her decision. Respondents contend that this practice constitutes reversible error.
 10 Respondents cite Quincy Country Club v. Illinois Human Rights Comm'n (1986), 147 Ill. App.3d 497, 498 N.E.2d 316, as authority for their contention. We find this case factually distinguishable from the case at bar. In Quincy Country Club, the evidence on nearly every issue was highly disputed, making the credibility of the witnesses an important factor in the judge's decision. The parties in the instant proceedings stipulated to a majority of the testimony. Credibility *710 assessments are unnecessary where the testimony is stipulated and the dispute between the parties lies in the application of the law to the facts. (See Illinois Bell Telephone Co. v. Human Rights Comm'n (1989), 190 Ill. App.3d 1036, 547 N.E.2d 499, appeal denied (1989), 129 Ill.2d 563.) We therefore conclude that the substitution of the administrative law judge did not constitute reversible error.

V
 11 We agree with the Commission's determination that Limited is the successor or assignee of the Corporation. It was proper to add Limited as an additional party to the complaint. We therefore conclude that the Commission had jurisdiction to enter an order against Limited as the successor or assignee of the Corporation.
Accordingly, the order of the Human Rights Commission is affirmed.
Affirmed.
DiVITO, P.J., and SCARIANO, J., concur.