(No. 73806.—

## THE BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY et al., Appellants, v. THE DEPARTMENT OF HUMAN RIGHTS et al., Appellees.

*Opinion filed May 19, 1994.*

HARRISON, J., took no part.
NICKELS, J., joined by FREEMAN, J., dissenting.

Shari R. Rhode and Denise E. Gale, of Carbondale, Theodore R. Leblang, of Springfield, and John Gilbert, of Edwardsville, for appellants.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellees.

Justin D. Smock, of Chicago, for *amicus curiae* Illinois Department of Corrections.

Hinshaw & Culbertson, of Chicago (Joshua G. Vincent, of counsel), for *amici curiae* American Civil Liberties Union of Illinois *et al.*

JUSTICE HEIPLE delivered the opinion of the court:

At issue in this case is whether the Illinois Department of Human Rights (the Department) has jurisdiction to hear a complaint alleging racial discrimination

in an academic program at a public university. We conclude that it does not.

Plaintiffs, the Board of Trustees (the Board) of Southern Illinois University (SIU) and certain of SIU's employees, David White, Jim Bramlet, Richard Moy and Terry Travis, were granted a writ of prohibition by the circuit court of Jackson County to prevent defendants, the Department, its director, Joyce E. Tucker, and two of its investigators, Freddie Gatewood and Stanley R. Moen, from pursuing certain charges against plaintiffs. Plaintiffs had been charged with unlawful discrimination in violation of the Illinois Human Rights Act (the Act) (Ill. Rev. Stat. 1989, ch. 68, par. 1—101 *et seq.*). The circuit court determined that the Department did not have statutory jurisdiction to investigate the charges because the alleged discrimination occurred in the context of the SIU's academic programs. A divided appellate court reversed (228 Ill. App. 3d 367), and we granted plaintiffs' petition for leave to appeal (134 Ill. 2d R. 315). We now reverse the appellate court's ruling.

The facts which gave rise to this appeal began when two black SIU students, Kevin Mitchell and Marsha Stokes, filed charges with the Department alleging that plaintiffs had discriminated against them based on their race or sex in violation of the Act. Mitchell charged that Terry Travis, the director of psychiatry clerkship at SIU's school of medicine, and Richard Moy, the dean of the medical school, unlawfully discriminated against him when he was dismissed from the medical school after his third year. He claimed he was treated differently than nonblack and female classmates in the way he was evaluated. Mitchell also alleged that he was denied the same opportunities to retake final examinations and for clerkships, and that Travis demonstrated a racial bias which harmed the evaluation of Mitchell's clerkship at his dismissal hearing.

Stokes alleged that she was the only black student in the commercial graphics program at SIU. She claimed that David White, Jim Bramlet, and the Board were guilty of unlawful racial discrimination by sanctioning the existence of a racially hostile classroom environment. Stokes alleged that the other, white students were allowed to harass and threaten her and to subject her to racial epithets. Further, she was suspended from class without advance notice, which was usually provided to other students.

The Department served copies of the charges on the plaintiffs. SIU filed a response on behalf of all the plaintiffs, in which it opined that the Department lacked jurisdiction "to entertain allegations of racial discrimination in academic programs."

The Department informed SIU that it intended to assert jurisdiction over the charges. Plaintiffs then filed a petition for a writ of prohibition to block the Department from proceeding further. The circuit court of Jackson County subsequently entered a default judgment for plaintiffs which permanently enjoined the Department from taking any additional action with regard to the charges. The appellate court reversed the default judgment and remanded the cause to the circuit court for consideration on the merits. *Board of Trustees of Southern Illinois University v. Department of Human Rights* (1989), 190 Ill. App. 3d 644.

On remand, plaintiffs filed an amended petition for writ of prohibition. Although similar to the initial petition, the amended petition added a request to block the Department from conducting any and all proceedings in the matter of an unlawful discrimination claim filed by another black SIU student, Michael Scruggs. Scruggs claimed that the Board unlawfully discriminated against him by grading and testing him differently than white students, resulting in the denial of his admission to a Ph.D. program.

The amended petition was decided on cross-motions for summary judgment, as there were no disputed facts. The only question was the legal issue of whether the Department had jurisdiction to pursue the discrimination charges where the challenged conduct occurred in the context of SIU's academic programs. The circuit court held that the Department had no such jurisdiction and granted the writ of prohibition.

A split appellate court reversed the circuit court's decision and remanded the cause. (228 Ill. App. 3d 367.) The majority of the appellate court concluded that it did not matter whether SIU was considered a place of public accommodation within the context of its academic programs because section 5—102(C) of the Act, which prohibits discrimination by a public official, does not require that such discrimination occur within a place of public accommodation. Ill. Rev. Stat. 1989, ch. 68, par. 5—102(C).

## DISCUSSION

"An administrative agency *** has no greater powers than those conferred upon it by the legislative enactment creating it." (*Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 506.) Thus, our inquiry is whether the General Assembly gave the Department jurisdiction to hear this case.

There are but two sections of the Act which could arguably give rise to a claim of jurisdiction for the Department over the conduct alleged: section 5—102(A) or section 5—102(C) (Ill. Rev. Stat. 1989, ch. 68, pars. 5—102(A), (C)). We address these sections in turn.

Section 5—102(A) states:

"It is a civil rights violation for any person on the basis of unlawful discrimination to:

(A) *** Deny or refuse to another the full and equal enjoyment of the facilities and services of any public place of accommodation." Ill. Rev. Stat. 1989, ch. 68, par. 5—102(A).

At issue is whether an academic program in a public institution of higher learning is a "public place of accommodation" under the Act. Since the primary role of the court in interpreting a statute is to ascertain and effectuate the intent of the legislature (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277), we look to the legislature's definition of the term to resolve this issue.

Section 5—101(A) defines a "Place of Public Accommodation" as follows:

"(1) 'Place of public accommodation' means a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public.

(2) By way of example, but not of limitation, 'place of public accommodation' includes facilities of the following types: inns, restaurants, eating houses, hotels, soda fountains, soft drink parlors, taverns, roadhouses, barber shops, department stores, clothing stores, hat stores, shoe stores, bathrooms, restrooms, theatres, skating rinks, public golf courses, public golf driving ranges, concerts, cafes, bicycle rinks, elevators, ice cream parlors or rooms, railroads, omnibuses, busses, stages, airplanes, street cars, boats, funeral hearses, crematories, cemeteries, and public conveyances on land, water, or air, public swimming pools and other places of public accommodation and amusement." Ill. Rev. Stat. 1989, ch. 68, par. 5—101(A).

The doctrine of *ejusdem generis* provides that when a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those "others such like" the named persons or things. *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 396; *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436.

We note that the terms "institution of higher education," "education program" and "classroom" are not contained anywhere in the list provided in the Act.

Further, the examples listed in the Act are fundamentally different from institutions of higher education, which administer educational programs. The cited establishments are examples of facilities for overnight accommodations, entertainment, recreation or transportation. The definition specifically requires that the "services, facilities, privileges, advantages or accommodations [be] extended, offered, sold, or otherwise made available to the public." Ill. Rev. Stat. 1989, ch. 68, par. 5—101(A)(1).

Thus, what was anticipated by the General Assembly is a restaurant, or a pub, or a bookstore. What was not anticipated is an academic program of a higher education institution. Thus, we hold that the conduct alleged by the Department does not fall within section 5—102(A), and consequently no jurisdiction is conferred by that section over this cause of action.

The second arguable source of jurisdiction is section 5—102(C). That section makes it a civil rights violation to "[d]eny or refuse to another, as a public official, the full and equal enjoyment of the accommodations, advantage, facilities or privileges of the official's office or services or any property under the official's care because of unlawful discrimination." Ill. Rev. Stat. 1989, ch. 68, par. 5—102(C).

Plaintiffs concede that they are public officials for purposes of the Act, as the Act defines a public official as "any officer or employee of the state." (Ill. Rev. Stat. 1989, ch. 68, par. 5—101(C).) Thus, the issue becomes whether academic programs are "accommodations" of these public officials for purposes of section 5—102(C).

Again, the primary purpose of statutory interpretation is to ascertain and effectuate the intent of the legislature. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) When the legislature spoke of the accommodations of a public official's office, it was by definition

referring to public accommodations. We therefore give the same reading to "the accommodations \*\*\* of the [public] official's office or services" that we did to "public accommodations." (Ill. Rev. Stat. 1989, ch. 68, par. 5—102(C).) Consequently, we hold that the conduct alleged by the Department does not fall within section 5—102(C), and consequently no jurisdiction is conferred by that section to this cause of action.

This conclusion is bolstered by the legislature's 1983 enactment of article 5A of the Act (Ill. Rev. Stat. 1989, ch. 68, pars. 5A—101, 5A—102). That article specifically confers jurisdiction on the Department over claims of sexual harassment in higher education.

Where the legislature has made a material change in a statute, such as by adding specific limited jurisdiction language, the presumption is that "the amendment was intended to change the law." *State of Illinois v. Mikusch* (1990), 138 Ill. 2d 242, 252.

Had higher education already been covered by the Act, a simple amendment adding sexual harassment to the Department's jurisdiction would have been sufficient. The addition of an entire new article evinces the legislature's understanding that, until that new article's passage, no jurisdiction had yet been conferred to the Department over institutions of higher education.

Since 1983, the Department has had jurisdiction over higher education, but only over a very distinct type of claim: sexual harassment. Since no such allegation was made in the present cause, the trial court appropriately granted the writ of prohibition, and the appellate court erroneously reversed. Thus, we reverse the appellate court and affirm the trial court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.

JUSTICE NICKELS, dissenting:

I cannot agree that the Department of Human Rights lacks authority under the Illinois Human Rights Act to pursue charges of racial and sexual discrimination in an academic program of a public university. Therefore, I respectfully dissent.

The purpose of the Act is "[t]o secure for all individuals within Illinois the freedom from discrimination because of race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations; and to prevent unlawful discrimination or sexual harassment in employment, discrimination in connection with real estate transactions based upon familial status and sexual harassment in higher education." (Ill. Rev. Stat. 1989, ch. 68, par. 1—102(A).) Where it applies, the Act is the exclusive form of redress in Illinois for civil rights violations. *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 7.

As a remedial statute, the Act should be liberally construed to effectuate its purpose. (*Arlington Park Race Track Corp. v. Human Rights Comm'n* (1990), 199 Ill. App. 3d 698.) Where the language of a statute is unclear, a court should consider the purpose of the enactment and the evils to be remedied. *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318.

As the majority notes, the primary purpose of statutory construction is to ascertain and effectuate the intent of the legislature. The majority finds that an academic program at a public university is not a "public accommodation" as defined by section 5—101(A)(1) of the Act (Ill. Rev. Stat. 1989, ch. 68, par. 5—101(A)(1)). While such a strict reading of the statute is appealing, the practical results are contrary to the purposes of the

Act. Under the majority's reasoning, the legislature "intended" to protect a student from discrimination suffered at the hands of a university cafeteria worker or bookstore employee, but not from a professor or administrator of an academic program at the same public university. I cannot agree that the legislature intended such an anomalous statutory scheme to secure the stated purposes of the Act.

The majority finds support for the conclusion that the Act confers no jurisdiction to the Department of Human Rights for racial and sexual discrimination in higher education from the legislature's enactment of article 5A in 1983. (Ill. Rev. Stat. 1989, ch. 68, pars. 5A—101, 5A—102.) That article confers authority to the Department of Human Rights for claims involving sexual harassment in higher education. The majority reasons that "[h]ad higher education already been covered by the Act, a simple amendment adding sexual harassment to the Department's jurisdiction would have been sufficient." (159 Ill. 2d at 213.) The majority then concludes that the addition of a whole new article shows the legislature understood that no jurisdiction had yet been conferred on the Department over institutions of higher education.

I agree with the appellate court that article 5A was intended as an expansion of a university official's liability for sexual harassment, and in no way evinces a desire to limit a university official's liability for discrimination. In the debates concerning the sexual harassment amendment, Representative Koehler stated:

"[This amendment] amends the Illinois Human Rights Act to include sexual harassment in higher education as a civil rights violation. Under the Human Rights Act, discrimination on the basis of sex already constitutes a civil rights violation. However, it is important to point out that there is a distinct difference between sex discrimination, which deals with prejudice[,] and sexual harassment,

which deals with a hostile environment and repeated torment." (83d Ill. Gen. Assem., House Proceedings, May 5, 1983.)

This statement shows that the General Assembly considered sexual harassment to be a separate and distinct problem from other forms of discrimination already covered by the Act. Contrary to the majority, I feel the distinctive nature of sexual harassment caused the General Assembly to provide separate treatment for sexual harassment in article 5A. In addition, I believe Representative Koehler's statement intimates that the General Assembly already believed institutes of higher education were covered by the general provisions relating to discrimination in the Act.

The majority's limited definition of a "public accommodation" is also difficult to reconcile with the Act's definition of civil rights violations involving public officials. Section 5—102(C) states:

"[It is] a civil rights violation for any person on the basis of unlawful discrimination to:

* * *

*** Deny or refuse to another, as a public official, the full and equal enjoyment of the accommodations, advantage, facilities or privileges of the official's office or services or of any property under the official's care because of unlawful discrimination." (Ill. Rev. Stat. 1989, ch. 68, par. 5—102(C).)

Plaintiffs admit that they are public officials for purposes of the Act. The majority, however, finds that section 5—102(C) prohibits a public official only from discriminating in regard to a public accommodation.

This reading makes most of the language in section 5—102(C) superfluous. Section 5—102(C) does not only forbid a public official from discriminating in an "accommodation." The section goes on to prohibit discrimination in administering "advantage[s], facilities or privileges of the official's office" as well as "services or any property under the official's care." The majority does

not acknowledge this language. I would find that section 5—102(C) confers jurisdiction to the Department of Human Rights over discrimination claims against these "public officials" regarding educational "services" under the officials' care at an institute of higher education. Therefore, I respectfully dissent.

JUSTICE FREEMAN joins in this dissent.