EMILY GILBERT, Petitioner-Appellant, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents-Appellees.

First District (4th Division)    No. 1—01—2428

Opinion filed September 30, 2003.

Equip for Equality, Inc., of Chicago (Karen I. Ward and Shenetta Webster, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (David E. Neumeister, Kelli A. Borden, and Daniel F. Gallagher, of counsel), for appellee Above & Under Water, Inc.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Catherine Basque Weiler, of counsel), for appellee Department of Human Rights.

JUSTICE HARTMAN delivered the opinion of the court:

In this direct administrative review, petitioner Emily Gilbert seeks

judicial consideration of the dismissal by the chief legal counsel (CLC) of the Department of Human Rights (the Department) of a discrimination charge she brought against respondent Above & Under Water, Inc. (respondent). 775 ILCS 5/8—111 (West 2000); 155 Ill. 2d R. 335. The Department dismissed petitioner's charge for lack of substantial evidence and the CLC affirmed the dismissal. Petitioner contends that the CLC erred in: (1) finding that respondent was not a place of public accommodation under the Illinois Human Rights Act (the Act) (775 ILCS 5/1—101 *et seq.* (West 2000)) and (2) concluding that there was a lack of substantial evidence to support petitioner's charge.

Petitioner filed a complaint with the Department against respondent charging that respondent denied her continued services on October 7, 1999, because of her mental handicap, a learning disability. According to petitioner, respondent's actions constituted unlawful discrimination based on her mental handicap in violation of section 5—102(A) of the Act (775 ILCS 5/5—102(A) (West 2000)) (section 5—102(A)).

Respondent is a business, owned and operated by Donald Milliken, that conducts classes in scuba diving and other similar water-related activities. Classes are conducted in accordance with the practices and procedures of the Professional Association of Diving Instructors (PADI) and the Divers Alert Network (DAN). On September 15, 1999, petitioner, her mother, Debra Fuller (Debra), and her stepfather, Robert Fuller, began taking scuba diving lessons from respondent. Before beginning her lessons, petitioner was required to complete the PADI medical statement, as were all other prospective students. Where an applicant lists the presence of any of the enumerated conditions, the applicant must obtain physician approval before he or she can participate in the class. Petitioner answered "no" to all questions regarding behavioral health problems. Petitioner did not disclose her learning disability on the medical statement.

The scuba diving class in which petitioner and her family enrolled consisted of five modules. At the end of each module students had to pass both a written and a water skills test in order to advance toward completion of the class and diver certification. Petitioner passed three of the five modules. She was required to retake the written tests for both module one and module three. Also, she was required to do a retest for module four, but never scheduled the test. In September 1999, while practicing diving skills petitioner became frightened and would not complete the session. On October 10, 1999, petitioner again became frightened, began to cry, and failed to complete the lesson.

In October 1999, when Debra called Milliken to reschedule some pool sessions, she told Milliken that petitioner had a learning dis-

ability. Milliken responded that petitioner could not continue the lessons unless she obtained medical clearance from her physician. Milliken contacted both PADI and DAN and asked for guidance in handling petitioner's situation. Both PADI and DAN recommended that respondent require petitioner to obtain a physician's approval before allowing her to continue with the class. Milliken told petitioner that if she obtained the proper physician's approval, his wife (a dive master) would work personally with petitioner to improve her skills.

Petitioner never obtained a physician's approval. Instead, she presented a "letter of recommendation" from a counselor at her high school and another letter signed by both her high school psychologist and principal. The letters stated that petitioner was able to participate in the scuba diving class. Because petitioner never provided a physician's approval, she was not allowed to continue with the class.

The Department dismissed petitioner's complaint for lack of substantial evidence. The CLC sustained the dismissal on the grounds that: (1) respondent was not a "place of public accommodation" pursuant to the Act; and (2) even if respondent were a "place of public accommodation," there was no evidence that respondent discontinued its services to petitioner because of her mental handicap.

Petitioner first contends that the CLC erred in finding that respondent was not a place of public accommodation under the Act.

■ Whether respondent is a place of public accommodation under the Act is a matter of statutory construction subject to *de novo* review. *Cut 'N Dried Salon v. Department of Human Rights*, 306 Ill. App. 3d 142, 713 N.E.2d 592 (1999) (*Cut 'N Dried*). The judicial objective in construing a statutory provision is to determine and give effect to the legislature's intent. *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 636 N.E.2d 528 (1994) (*Board of Trustees*). The language of the statutory provision itself is the best evidence of that intent and must be given its plain and ordinary meaning. *Cut 'N Dried*, 306 Ill. App. 3d at 145.

■ Section 5—102(A) of the Act provides that "[i]t is a civil rights violation for any person on the basis of unlawful discrimination to: (A) *** Deny or refuse to another the full and equal enjoyment of the facilities and services of any public place of accommodation."[1] 775 ILCS 5/5—102(A) (West 2000). Section 5—101(A) of the Act defines "place of public accommodation" as:

"(1) 'Place of public accommodation' means a business, accom-

---

[1]"Unlawful discrimination" is defined in part as "discrimination against a person because of his or her *** handicap." 775 ILCS 5/1—102(Q) (West 2000).

modation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public.

(2) By way of example, but not of limitation, 'place of public accommodation' includes facilities of the following types: inns, restaurants, eating houses, hotels, soda fountains, soft drink parlors, taverns, roadhouses, barber shops, department stores, clothing stores, hat stores, shoe stores, bathrooms, restrooms, theaters, skating rinks, public golf courses, public golf driving ranges, concerts, cafes, bicycle rinks, elevators, ice cream parlors or rooms, railroads, omnibuses, busses, stages, airplanes, street cars, boats, funeral hearses, crematories, cemeteries, and public conveyances on land, water, or air, public swimming pools and other places of public accommodation and amusement." 775 ILCS 5/5—101(A) (West 2000) (section 5—101(A)).

Petitioner first argues that respondent falls under the plain language of the definition of "public accommodation" found in section 5—101(A)(1) because it is a "business ***, recreation, *** facility of any kind." A similar argument was rejected in *Baksh v. Human Rights Comm'n*, 304 Ill. App. 3d 995, 711 N.E.2d 416 (1999) (*Baksh*), where the court noted that such a broad interpretation of the phrase "business *** facility of any kind" would render the Act's definition of "place of public accommodation" and the accompanying examples found in section 5—101(A)(2) surplusage. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 561 N.E.2d 656 (1990) (statutes should be construed so that no word or phrase is rendered superfluous or meaningless). Had the legislature intended such a broad definition of a "place of public accommodation," the definition would simply read "a 'place of public accommodation' is a business facility of any kind." *Baksh*, 304 Ill. App. 3d at 1003. The court noted that the words and structure of the statute indicate some limitation on the type of business intended for inclusion in the definition. *Baksh*, 304 Ill. App. 3d at 1003. A business offering scuba diving classes does not fall under the plain language of section 5—101(A)(1), nor is it specifically included in section 5—101(A)(2).

■ Where the entity accused of discrimination as a place of public accommodation is not enumerated specifically in the Act, a determination must be made whether it falls into the broad definition of that term by focusing on the language of the statute. Our supreme court has held that the doctrine of *ejusdem generis* should be applied, which provides: "when a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those 'others such like' the

named persons or things." *Board of Trustees*, 159 Ill. 2d at 211. In applying the doctrine, the focus should be on the nature of the activity itself and whether the activity is similar to the activities listed in the statute. *Baksh*, 304 Ill. App. 3d at 1004; *Cut 'N Dried*, 306 Ill. App. 3d at 146.

In *Board of Trustees*, the supreme court, applying the doctrine of *ejusdem generis*, held that an academic program of an institution of higher education was not a "place of public accommodation" under the Act. The court noted that the terms "institution of higher education," "education program," and "classroom" were not contained in the list set out in the Act. The court then compared an academic program of a higher education institution to the examples enumerated in the Act and concluded that the legislature anticipated "a restaurant, or a pub, or a bookstore," not an academic program of a higher education institution. *Board of Trustees*, 159 Ill. 2d at 212.

In *Cut 'N Dried*, the appellate court applied the doctrine of *ejusdem generis* to find that an insurance company did not fall under the purview of the Act as a public accommodation. In that case an insurer had declined to provide health insurance coverage to an applicant employed at a hair salon because hairdressers worked in a high risk occupation. The applicant filed a discrimination charge after obtaining similar insurance coverage from another insurer at a higher premium. In affirming the Department's determination that the insurer was not a "place of public accommodation" as defined by the Act, the court noted that while the insurer was a business, it was unlike the businesses enumerated in section 5—101(A)(2) which provide services to all members of the general public without any prescreening or qualification. The fact that the insurer provided its services only after analyzing a particular applicant and determining whether to provide coverage based on the factors revealed in the application distinguished the insurer from the businesses listed in the Act "that provide overnight accommodations, entertainment, recreation or transportation where one individual is no different than the next." *Cut 'N Dried*, 306 Ill. App. 3d at 147.

■ Similarly, in the case *sub judice*, respondent required prescreening of applicants before providing its services to members of the public as a safety precaution. All prospective students were required to complete a PADI medical statement prior to being accepted into the class. The medical statement was used to determine whether a prospective student had to obtain a medical clearance from a physician before taking a class. The scuba diving classes were available only to clients who agreed to "maintain good physical and mental fitness for diving" and agreed to refrain from being under the influence of

alcohol or dangerous drugs while diving. As in *Cut 'N Dried*, respondent did not provide its services "as if one individual was no different from the next." See 306 Ill. App. 3d at 147. Respondent was not like the businesses enumerated in section 5—101(A)(2) which provide services to all members of the general public without pre-screening or qualification.

The CLC correctly affirmed the dismissal of petitioner's charge because respondent was not a place of public accommodation under the Act.

In light of the above finding, petitioner's other argument need not be considered.

For the reasons set forth above, the decision of the chief legal counsel sustaining the dismissal of petitioner's charge is affirmed.

Affirmed.

THEIS and KARNEZIS, JJ., concur.